Mary Jean Louise ANDERSON, An Incompetent, by David E. Smithson, Her Guardian, Plaintiffs-Appellants,†

v.

Floyd W. McBURNEY, An Incompetent, By Georgianna Stebnitz, His Guardian, Whipple Law Offices, S.C., a Wisconsin Service Corporation, Carlyle H. Whipple, Melvin W. Bieber, Wisconsin Lawyers Mutual Insurance Company, a Wisconsin Mutual Insurance Company, St. Paul Fire & Marine Insurance Company, a Minnesota Corporation, Continental Casualty Company, an Illinois Corporation, Defendants-Respondents.

Court of Appeals

*No. 89-2326. Submitted on briefs June 7, 1990.—Decided February 14, 1991.*

(Also reported in 467 N.W.2d 158.)

† Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Loduha & Zeman,* by *Robert J. Zeman,* of Manitowoc.

For the defendant-respondent, Floyd W. McBurney, the cause was submitted on the briefs of *Boardman, Suhr, Curry & Field,* by *Bonnie A. Wendorff* and *Claude J. Covelli,* of Madison.

For the defendants-respondents, Whipple Law Office, S.C., Carlyle H. Whipple, and Continental Casualty Company, the cause was submitted on the briefs of *Jenswold, Studt, Hanson, Clark & Kaufman,* by *Allen A. Arntsen,* of Madison.

For the defendants-respondents, Carlyle H. Whipple and St. Paul Fire and Marine Insurance Company and co-counsel for Floyd W. McBurney, the cause was submitted on the briefs of *Bell, Metzner, Gierhart & Moore,* by *John W. Markson,* of Madison.

For the defendants-respondents, Lawyers Mutual Insurance Company, the cause was submitted on the briefs of *Whyte & Hirschboeck, S.C.,* by *Peter L. Gardon,* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. The guardian of Mary Jean Anderson appeals from a summary judgment dismissing her claims against attorneys Floyd McBurney, Carlyle Whipple, and Melvin Bieber, against Whipple Law Offices, S.C., and against their professional liability insurance carriers.[1] Anderson, a mentally incompetent person, is her father's sole heir. McBurney is the pri-

---

[1]When we refer to "defendants" in this opinion, we mean only the defendant attorneys and their law firm.

870

mary beneficiary under the will of Anderson's father. The Whipple Law Offices, S.C., probated the decedent's estate. McBurney and the other individual defendants are attorney-shareholders in that service corporation. Anderson alleges that when decedent's heirship was proved, McBurney falsely testified that decedent was not survived by a child, denying Anderson the opportunity to challenge the will benefitting McBurney. Neither the will admitted to probate nor decedent's prior will refers to Anderson.

The issues are whether: (1) the attorneys for a decedent's personal representative are liable to an heir for negligently investigating heirship, (2) Anderson states a claim of an intentional tort by McBurney for knowingly submitting a false proof of heirship omitting her; and, if so, whether defendants have established a *prima facie* defense to her claim, and (3) McBurney's fellow shareholders are liable for McBurney's intentional tort, if any.

We conclude that the complaint does not state a claim in negligence. It states a claim against McBurney for intentional tort, and defendants have not established a *prima facie* defense to that claim. The complaint fails to state a claim against the other shareholders.

## A. NEGLIGENT INVESTIGATION OF HEIRSHIP

Summary judgment is governed by sec. 802.08, Stats. The procedure for deciding summary judgment motions is described in many cases such as *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). We first decide whether the complaint states a claim. In testing the sufficiency of a complaint, we assume the truth of all facts pleaded by the plaintiff and all inferences which can reasonably be derived from those facts. A complaint should be dismissed as legally

insufficient only if under no circumstances can plaintiff recover. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 317, 401 N.W.2d 816, 821 (1987).

The complaint[2] alleges that Anderson's father died on September 25, 1979, leaving an estate of $79,714.79. His last will was executed in 1974. It left $1,000.00 to a church and the balance to McBurney. Defendants, known as Whipple Law Offices, probated the 1974 will.[3] Decedent had executed an earlier will in 1965. That will left $1,000.00 to a church and the balance to McBurney's mother, who died in 1973. Neither will refers to Anderson.

## 1. Pretermitted Heir

Anderson's first claim alleges that during probate the defendant attorneys negligently investigated heirship. As a result, no guardian ad litem was appointed for her, she had no notice of the probate and she was "deprived of the opportunity" for a judicial determination whether her father had unintentionally failed to provide in his will for her. We conclude that these allegations fail to state a claim.[4]

---

[2] We refer to the second amended complaint as the complaint.

[3] The intent is to allege that the law firm represented the personal representative. It is undisputed that the will nominates a named bank as personal representative and the bank was appointed.

[4] We note that Anderson is not necessarily without a remedy.

The law in Wisconsin holds that where the respondent fails to give legal notice to the proper parties in interest, as the appellants in this, all orders and judgments entered in the previous probate proceedings would be void as the failure to give legal notice would result in a defect of jurisdiction rendering the proceeding ineffective as to those parties in interest to whom no notice was given. MacDonald, *Wisconsin Probate Law and Practice,* Vol. 1, sec. 1.60, p.12 (1972).

*In re Phillips,* 92 Wis. 2d 354, 362, 284 N.W.2d 908, 913 (1979).

■

An attorney is not liable to third parties for negligent acts committed within the scope of an attorney-client relationship. *Green Spring Farms,* 136 Wis. 2d at 321–22, 401 N.W.2d at 823. The defendants' client was the personal representative of the estate, not Anderson. *See In re Ainsworth,* 52 Wis. 2d 152, 159, 187 N.W.2d 828, 831 (1971); *In re Sieben,* 24 Wis. 2d 166, 169–170, 128 N.W.2d 443, 445 (1964) (personal representative has right to choose attorney).

■

An exception to the *Green Spring* rule exists for beneficiaries named in a will: an attorney may be liable to a named beneficiary who lost a bequest because the will was improperly executed under the attorney's supervision. *Auric v. Continental Cas. Co.,* 111 Wis. 2d 507, 331 N.W.2d 325 (1983). The exception does not apply to Anderson under either of her father's wills.

■

Moreover, Anderson's first claim fails to adequately allege harm to her. Harm is an element of negligence which must be pleaded. *Nelson v. Davidson,* 155 Wis. 2d 674, 679, 456 N.W.2d 343, 345 (1990). Loss of a mere opportunity for a judicial determination as to whether her father's will unintentionally omitted her is not harm. Harm would result only if her father had unintentionally omitted her from the will. If by mistake or accident her father failed to provide for her when he made his will, then she would be entitled to receive her intestate share, but failure to mention her in his will is not in itself evidence of mistake or accident. Section 853.25(2), Stats. Since the complaint does not allege that Anderson's father in fact had failed to provide for her in his will because of mistake or accident, the first claim is insufficient as a matter of law.

Because the first claim does not state a cause of action in negligence, our summary judgment analysis stops as to that claim. *Green Spring Farms,* 136 Wis. 2d at 318, 401 N.W.2d at 821. The trial court properly dismissed the first claim.

2. Undue Influence

The second claim alleges that but for the negligence of the defendants in ascertaining heirship, Anderson could have successfully objected on grounds of undue influence to the admission of both the 1974 and 1965 wills, and she would have received the entire estate under the laws of intestate succession.

While these allegations cure the deficiency in the first claim with respect to harm, an attorney is not liable to third parties for negligent acts committed within the scope of an attorney-client relationship. *Green Spring Farms,* 136 Wis. 2d at 321–22, 401 N.W.2d at 823. If defendants negligently served their client, the personal representative, that does not give rise to a claim by Anderson, a third party.

We conclude that the second claim does not state a cause of action. For that reason, our summary judgment analysis stops as to that claim. *Green Spring Farms,* 136 Wis. 2d at 318, 401 N.W.2d at 821.

## B. INTENTIONAL TORT BY McBURNEY

The third claim is solely against McBurney. Anderson alleges that he intentionally and knowingly misrepresented to the probate court that her father had no living issue, that McBurney "did so for the purpose of facilitating his receipt of the entire estate . . . under the wills that he induced [decedent] to execute through the exercise of undue influence . . . .." She alleges that

McBurney deprived her of an opportunity to contest the wills, that she would have been successful in contesting both wills on grounds of McBurney's undue influence, and that she has been deprived of her right to receive the estate. She seeks punitive damages from McBurney. We conclude that the third claim states a cause of action against McBurney.

"One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." *Restatement (Second) of Torts* sec. 774B (1977). Here, the tortious means alleged is the misrepresentation to the probate court regarding heirship. If McBurney made such a misrepresentation, he is not protected by *Green Spring Farms*. That case shields attorneys only from liability in negligence to third parties. The misrepresentation Anderson claims McBurney made is alleged to have been intentional.

Having concluded that the third claim states a cause of action, we turn to McBurney's answer. We treat the defendants' collective answer as McBurney's answer. The defendants collectively admit that McBurney executed the proof of heirship and that he was the primary beneficiary of the last will of Anderson's father, but deny that he knowingly misrepresented to the probate court that her father had no living issue. As an affirmative defense, defendants plead and argue that McBurney was absolutely privileged from civil liability for damages arising out of his testimony before the probate court regarding heirship.[5]

---

[5]The answer pleads other affirmative defenses, none of which are argued. We do not address them.

We first discuss the affirmative defense of privilege. Defendants rely on the rule that statements made during judicial proceedings are privileged. Several Wisconsin cases have held that the immunity defense is available in defamation actions. A defendant in an action for defamation may assert the defense that the alleged defamatory statement was made in a judicial proceeding. *Bergman v. Hupy,* 64 Wis. 2d 747, 749-50, 221 N.W.2d 898, 900 (1974); *see e.g., Bromund v. Holt,* 24 Wis. 2d 336, 341-42, 129 N.W.2d 149, 152 (1964); *Keeley v. Great N. Ry.,* 156 Wis. 181, 145 N.W. 664 (1914); *Schultz v. Strauss,* 127 Wis. 325, 106 N.W. 1066 (1906); *Larkin v. Noonan,* 19 Wis. 93 [*82] (1865); *Calkins v. Sumner,* 13 Wis. 215 [*193] (1860).

However, defendants cite no case in which the rule, whether stated in terms of immunity or privilege, has been recognized in an action against a person, whether or not an attorney, for misrepresentations made to a court for the purpose described in Anderson's complaint. We see no reason why any person should escape civil liability for an intentional tort of the kind described in sec. 774B of the *Restatement* because they accomplished the tort by statements in a judicial proceeding. Summary judgment methodology compels us to assume that McBurney intentionally misrepresented the facts to the court to obtain Anderson's share of the estate. On that assumption, the claimed immunity or privilege is unavailable to McBurney.

We turn to the affidavits supporting the defendants' motions for summary judgment to determine whether a *prima facie* defense has been established for McBurney. To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would

defeat the plaintiff's claim. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477. We view the affidavits in the light most favorable to the party opposing the motion. *Delmore v. American Family Mut. Ins.,* 118 Wis. 2d 510, 512, 348 N.W.2d 151, 153 (1984).

■

If McBurney did not know Anderson was decedent's child or that she survived decedent, the claim against him must be dismissed. Knowledge is essential to the element of intent in *Restatement (Second) of Torts* sec. 774B. Defendants have submitted affidavits by a physician and a speech pathologist to the effect that McBurney now suffers from dementia and cannot understand or accurately respond to questions. Those affidavits fail to establish that when he testified to decedent's heirship, McBurney did not know that Anderson had survived her father.

Defendants rely partly on the deposition of Carlyle Whipple. He deposed that he was the attorney who probated the decedent's estate. The decedent lived with McBurney's mother until she died. McBurney was his friend. On October 16, 1979, McBurney wrote to the decedent's sister. The letter provides information about the decedent and his death and burial, states that proof of heirship would be taken on October 30, 1979, and asks: "Incidentally do you know whether [decedent] left any children or former wife living?" On October 22, 1979, the sister responded: "I do not know of any former wife or children living." Whipple made no further inquiry as to heirs and has no information regarding inquiry by any other person in his law firm.

■

Whipple's deposition does not establish a *prima facie* defense for McBurney to the claim that McBurney intentionally misrepresented decedent's heirship to the

probate court, since conflicting inferences may be drawn from McBurney's inquiry to decedent's sister. One inference is that McBurney did not know whether decedent was survived by a child. Another inference is that McBurney was testing whether his misrepresentation would be discovered. When, as here, reasonable and conflicting inferences may be drawn from the material supporting the motion, summary judgment may not be granted. *Grams,* 97 Wis. 2d at 339, 294 N.W.2d at 477.

We conclude that McBurney has failed to establish that he has a *prima facie* defense to Anderson's third claim. We stop our summary judgment analysis without examining the affidavits opposing his motion. The judgment, insofar as it dismissed the claim against McBurney, must be reversed.

### C. NEGLIGENT RELIANCE ON McBURNEY'S ALLEGED MISREPRESENTATIONS

Anderson's fourth claim alleges that Whipple, Bieber and Whipple Law Offices, S.C., negligently relied upon McBurney's misrepresentations as to decedent's heirship and negligently failed to independently investigate heirship. Anderson again asserts that had she been given notice of the probate proceedings, she could have successfully contested admission of the two wills on grounds of undue influence, and that she has been deprived, by the negligence of those defendants, of the right to inherit her father's estate. For the reasons stated with regard to her first claim, the allegations of negligence in her fourth claim fail to state a cause of action. The fourth claim was properly dismissed.

### D. JOINT AND SEVERAL LIABILITY

Anderson's fifth claim alleges that the Whipple Law Offices, S.C., and its shareholders other than McBurney are jointly and severally liable to her for his torts. Since her first, second and fourth claims fail to state a claim, we confine our analysis to these defendants' liability for McBurney's alleged intentional tort described in the third claim. We have already held that the third claim states a cause of action. The answer of the defendants denied the allegations in the third and fifth claims.

The Service Corporation Law, sec. 180.99(8), Stats.,[6] provides in relevant part:

> This section shall not alter any contract, tort or other legal relationship between a person receiving professional services and one or more persons who are licensed . . . to render such services and who are shareholders in the same service corporation; and any legal liability which may arise out of such service shall be joint and several among the shareholders of the same service corporation . . . ..

The defendants agree with plaintiff's argument that sec. 180.99(8), Stats., treats the shareholders in a service corporation as if they were partners, for liability purposes.[7] As to the corporation itself, there is no claim that the

[6]Section 180.99(8), Stats., 1987, was renumbered as sec. 180.1915, Stats., 1989, and amended.

[7]We conclude that the service corporation law does not relieve professionals practicing together from traditional partnership principles of joint and several liability for torts to non-clients as well as to clients. Anderson does not claim to have been a client of Whipple Law Offices. We base our conclusion on the fact that the legislature's primary goal in creating the service corporation law was to allow professionals to benefit from tax advantages available to corporations, not to alter their liability. "There is a continuing and joint personal responsibility of the shareholders for their professional acts." Kahn, *The Wisconsin Service Corpo-*

service corporation law alters its potential liability for a tort by its employee acting within the scope of the employee's authority and committed in the course of employment. *See Candee v. Egan,* 84 Wis. 2d 348, 368–69, 267 N.W.2d 890, 900 (1978).

The Uniform Partnership Act, sec. 178.12, Stats., provides in part: "All partners are liable: (a) Jointly and severally for everything chargeable to the partnership under ss. 178.10 . . .." Section 178.10, Stats. provides:

> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

According to one authority, "The partnership may be held liable for a partner's intentional injury to person or property of a third party if the act was in the scope of the partnership business. However, . . . such torts are usually not considered to be in the *ordinary course* of the partnership business." 1 A. Bromberg & L. Ribstein, *Bromberg and Ribstein on Partnership* sec. 4.07(d) (1988) (footnotes omitted).[8]

---

*ration Law of 1961,* 1962 Wis. L. Rev. 65, 77. *See also Melby v. O'Melia,* 93 Wis. 2d 51, 286 N.W.2d 373 (Ct. App. 1979).

[8]According to the same treatise, any intentional injury to the person or property of a third person is usually not considered to be in the ordinary course of a partnership because "unlike such business-oriented torts as excessively zealous promotion of the partnership's products, intentional injury to person or property, whatever the motive, is usually unpredictable and nonrecurring, so the other partners are usually not in a good position to reduce the costs associated with such acts." *Id.* Some cases look at least

We conclude that the complaint fails to state a claim against Whipple Law Offices, S.C., and the shareholders other than McBurney. The complaint alleges only that the other defendants are jointly and severally liable for McBurney's intentional tort. It fails to allege any facts tending to show that McBurney's intentional tort was committed in the ordinary course of the business of Whipple Law Offices, S.C. or with the authority of any of his fellow shareholders, or within the scope of McBurney's authority and in the course of his employment. Indeed, the complaint fails even to allege the conclusion of law that the tort was committed in the ordinary course of business or with such authority. The fifth claim fails to state a cause of action.

## E. CONCLUSION

in part to whether the partnership benefitted. Bromberg and Ribstein cite an unpublished United States District Court decision in Maryland as holding that law partners were liable for another partner's intentional overbilling of a major client by over three million dollars over three and one-half years where all partners shared the benefits. *Dresser Ind. v. Digges,* CIV No. JH-89-485 (D. Md. Aug. 30, 1989) (1989 WL 139234). *See also Vrabel v. Acri,* 103 N.E.2d 564, 567 (Ohio 1952) (copartners liable for torts to third person "done within the apparent scope of the business . . . and for its benefit."); *Schloss v. Silverman,* 192 A. 343, 346 (Md. 1937) (intentional tort by copartner without knowledge or consent of the others "and not for the benefit or purposes of the partnership . . . will not be considered as within the usual scope of an ordinary business partnership."). Wisconsin has applied a similar rule to the liability of a master for the intentional tort of a servant. *Linden v. City Car Co.,* 239 Wis. 236, 238, 300 N.W. 925, 926 (1941); *Bergman v. Hendrickson,* 106 Wis. 434, 436, 82 N.W. 304 (1900).

For the reasons stated, the judgment dismissing Anderson's first, second, fourth, and fifth claims against McBurney, Whipple, Bieber and Whipple Law Offices, S.C., must be affirmed. The judgment dismissing Anderson's third claim against McBurney must be reversed.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.