Ronald BEAUCHAMP, June Rittenhouse, Robert Beauchamp, and Margaret Boulanger, Plaintiffs-Appellants,†

v.

James A. KEMMETER, Lathrop & Clark, LLP, and Wisconsin Lawyers Mutual Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 00–0470. Submitted on briefs September 12, 2000.—Decided December 21, 2000.*

## 2001 WI App 5

(Also reported in 625 N.W.2d 297.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Cynthia L. Manlove* of *Hall Charne Burce & Olson, S.C.*, Milwaukee.

On behalf of the defendant-respondent, James A. Kemmeter and Wisconsin Lawyers Mutual Insurance Company, the cause was submitted on the brief of *Ward I. Richter* and *Sheila M. Sullivan* of *Bell, Gierhart & Moore S.C.*, Madison.

On behalf of the defendant-respondent, Lathrop & Clark, LLP, and Wisconsin Lawyers Mutual Insurance Company, the cause was submitted on the brief of *Earl H. Munson* of *Boardman, Suhr, Curry & Field, LLP*, Madison.

Before Dykman, P.J., Deininger, J., and William Eich, Reserve Judge.

¶ 1. DYKMAN, P.J. Ronald Beauchamp, June Rittenhouse, Robert Beauchamp, and Margaret Boulanger (Appellants) appeal from a judgment and an order dismissing their negligence claim against the law firm of Lathrop & Clark, LLP, and James A. Kemmeter, the attorney who drafted their uncle's will. They assert that, when extrinsic evidence of a testator's intent is available, third parties unnamed in a will should be permitted to maintain negligence actions against the drafting attorney. We disagree and conclude that the trial court properly dismissed the

735

Appellants' claim because, as non-clients unnamed in any will documents, they have no standing to sue Kemmeter. We therefore affirm.

## I. Background

¶ 2. The pleadings and affidavits set forth the following facts, which we note for background. Kemmeter is an attorney licensed to practice law in Wisconsin. Kemmeter drafted a will for Roy Burgo in 1986, and then drafted a new will for Burgo in 1990. The 1990 will provided that twenty-five percent of Burgo's estate would pass to his sister, Evelyn Beauchamp. Evelyn passed away in December 1995. After Evelyn's death, Burgo's live-in aid, Robert Schneider, prepared a list of Evelyn's four children and two stepchildren. Her four children are the Appellants, none of whom were named in the 1990 will.

¶ 3. At a January 1996 meeting, Kemmeter was told of Evelyn's death and given the list of Evelyn's children and stepchildren. Burgo died in May 1996. Whether Burgo had intended to change his estate plan and whether he directed Kemmeter to redraft a will to include the Appellants are questions the parties dispute.

¶ 4. The Appellants sued Kemmeter, Lathrop & Clark, and Wisconsin Lawyers Mutual Insurance Company, alleging that Kemmeter was negligent in failing to properly prepare a new will according to Burgo's intentions.[1] Kemmeter moved for summary judgment, arguing that he had no duty to the Appellants as a

---

[1] Kemmeter was a partner at Lathrop & Clark at the time of the January 1996 meeting. Both Kemmeter and Lathrop & Clark carried liability insurance with Wisconsin Lawyers Mutual Insurance Company. Because we conclude that the Appellants have failed to state a claim, we do not reach the

matter of law. Lathrop & Clark also moved for summary judgment, similarly arguing that the Appellants had no standing to sue Kemmeter or Lathrop & Clark. The Appellants countered that whether instructions given to Kemmeter at the January 1996 meeting created a duty in Kemmeter to change Burgo's will was a question of fact, and thus inappropriate for summary judgment. The trial court granted Kemmeter's and Lathrop & Clark's motions and dismissed the complaint. The Appellants appeal.

## II. Analysis

¶ 5. We review summary judgments de novo, using the same methodology as the trial court. *Estate of Thompson v. Jump River Elec. Coop.*, 225 Wis. 2d 588, 593, 593 N.W.2d 901 (Ct. App. 1999). The methodology is well known, and we need not repeat it in its entirety here. When using summary judgment methodology, we first determine whether the plaintiff has stated a valid claim for relief. *Eternalist Found., Inc. v. City of Platteville*, 225 Wis. 2d 759, 770, 593 N.W.2d 84 (Ct. App. 1999), *review denied*, 228 Wis. 2d 174, 602 N.W.2d 760 (1999). We examine the plaintiff's complaint and accept as true all facts pleaded and all inferences that can reasonably be derived from those facts. *Id.* For the reasons discussed below, we conclude that the Appellants' complaint fails to state a valid claim. Therefore, our analysis ends at this first step in summary judgment methodology, and we need go no further. *Id.*

¶ 6. The precise issue we address is whether parties who are unnamed in a will, but claim to be

question of Lathrop & Clark's liability or amounts payable under the insurance policies.

intended beneficiaries based on evidence extrinsic to a will, may maintain a negligence action against the attorney who drafted the will. We conclude that they may not.

¶ 7. As a general rule, an attorney is not liable to third parties for negligent acts committed within the scope of the attorney-client relationship. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 321, 401 N.W.2d 816 (1987). In other words, only an attorney's clients may normally sue that attorney for malpractice. In matters of estate planning, the supreme court carved out an exception to this general rule in *Auric v. Continental Cas. Co.*, 111 Wis. 2d 507, 512, 514, 331 N.W.2d 325 (1983). The *Auric* court held that an attorney could be liable to a third party if that attorney "acts negligently in drafting or supervising the execution of a will resulting in a loss to a beneficiary named therein." *Auric*, 111 Wis. 2d at 514.

¶ 8. The Appellants argue that we should extend the rule of *Auric* and apply it in this case. They assert that where, as here, extrinsic evidence of the testator's intent is available, courts should permit third parties unnamed in estate planning documents to proceed against the drafting attorney. Kemmeter argues that *Auric* and *Anderson v. McBurney*, 160 Wis. 2d 866, 467 N.W.2d 158 (Ct. App. 1991), preclude suits by third parties other than beneficiaries named in a will.

¶ 9. We hold that third parties may not maintain a cause of action for malpractice against the drafting attorney unless they are named in an executed or unexecuted will or similar estate planning document. Our conclusion is based primarily on the holdings of *Auric* and *Anderson*, and is supported by sound public policy and persuasive foreign authority.

738

¶ 10. In *Auric*, the testator's attorney, Timothy Crawford, drafted a new will and revocable trust in 1973 to replace a will executed in 1970. *Auric*, 111 Wis. 2d at 510. After the testator signed the trust, Crawford and his secretary signed as witnesses. *Id*. However, only the testator and Crawford signed the new will. *Id*. Due to "confusion" or a "mistake of the moment," Crawford's secretary failed to sign the will. *Id*. Because the 1973 will was only signed by one witness, it did not meet the will formality requirements of WIS. STAT. § 853.03(2) (1971). *Auric*, 111 Wis. 2d at 510–11. The probate court denied its admission and admitted the 1970 will instead. *Id*. The 1973 will contained a $25,000 bequest to Robert Auric; the 1970 will did not. *Id*. at 510. Auric sued Crawford, and the circuit court ruled that the lack of privity between Auric and Crawford barred Auric's action for negligence. *Id*. at 511–12. The supreme court reversed, concluding that Auric had a valid claim against Crawford. *Id*. at 515.

¶ 11. The *Auric* court rested its conclusion on the state constitutional right "to make a will and to have it carried out according to the testator's intentions." *Auric*, 111 Wis. 2d at 513 (citing *Will of Wright*, 12 Wis. 2d 375, 380, 107 N.W.2d 146 (1961); *Estate of Ogg*, 262 Wis. 181, 186–87, 54 N.W.2d 175 (1952)). The court reasoned that this right was promoted by allowing will beneficiaries to maintain suits against attorneys who negligently draft or negligently supervise the execution of a will. *Id*.

¶ 12. In *Anderson*, 160 Wis. 2d at 870, Mary Jean Anderson was her father's sole heir at law, and thus would have received her father's estate had he died intestate. *See also* BLACK'S LAW DICTIONARY 727 (7th ed. 1999). However, Anderson's father had a will

leaving $1,000 to a church and the balance of his estate to Floyd McBurney. *Anderson,* 160 Wis. 2d at 872. A previous will had left $1,000 to a church and the balance of the estate to McBurney's mother. *Id.* McBurney also happened to be a shareholder in the law firm that probated Anderson's father's estate. *Id.* at 871.

¶ 13.  Anderson alleged that McBurney and his firm negligently investigated heirship during probate. *Anderson,* 160 Wis. 2d at 872. Anderson further alleged that during the probate proceedings, McBurney falsely testified that Anderson's father was not survived by any children. *Id.* at 871. Finally, Anderson alleged that, as a result of McBurney's negligence, she received no notice of probate and was deprived of an opportunity for a judicial determination of whether her father had unintentionally failed to provide for her in his will. *Id.* at 872.

¶ 14.  Relying on the general rule of *Green Spring Farms* that an attorney is not liable to third parties for negligent acts committed in the course of an attorney-client relationship, we concluded that Anderson failed to state a valid claim for negligence. *Anderson,* 160 Wis. 2d at 872–74. We reasoned, "[i]f defendants negligently served their client, the personal representative, that does not give rise to a claim by Anderson, a third party." *Id.* at 874. We concluded that the *Auric* exception did not apply to Anderson. *Id.* at 873. She was not named in either of her father's wills. *Id.* at 871.

¶ 15.  While neither *Auric* nor *Anderson* presented an identical issue to that we decide here, we are convinced that the question presented by Appellants' case is more closely analogous to the situation in *Anderson* than in *Auric*.

¶ 16.  Like the Appellants, the plaintiff in *Anderson* was unnamed in any will, although the testator

had revised his will at least once over the years. *Anderson*, 160 Wis. 2d at 871–72. Like the Appellants, the only evidence of testator intent Anderson could rely on was extrinsic to any will. In that situation, we interpreted the exception to attorney nonliability to third parties narrowly. Citing *Auric*, we recognized, "[a]n exception to the *Green Spring [Farms]* rule exists for beneficiaries *named in a will*: an attorney may be liable to a *named beneficiary* who lost a bequest because the will was improperly executed under the attorney's supervision." *Id.* at 873 (emphasis added).

¶ 17.   In *Auric*, the testator's intent was apparent from a completed will that had merely been executed improperly. *Auric*, 111 Wis. 2d at 510–11. The Appellants have not alleged that they were ever named in any estate planning document. Thus, unlike in the case before us, in *Auric* the court could look to an obvious technical error and conclude that "it is clear that this will was intended to bring direct benefit to the plaintiff." *Id.* at 514. As we explained in *Anderson*, "[i]f by mistake or accident [Anderson's] father failed to provide for her when he made his will, then she would be entitled to receive her intestate share, but failure to mention her in his will is not in itself evidence of mistake or accident." *Anderson*, 160 Wis. 2d at 873.

¶ 18.   Questions of attorney nonliability to third parties also involve a consideration of public policy. *Auric*, 111 Wis. 2d at 512. The core concern of the *Auric* court, "this state's longstanding public policy supporting the right of a testator to make a will and have its provisions carried out," *id.* at 514, is not promoted by expanding the *Auric* exception to permit any disappointed potential beneficiary to maintain suit against a drafting attorney. When the only evidence a plaintiff

741

relies on is extrinsic to the estate planning documents, the testator's intentions are at least as likely thwarted as not. Unlike *Auric*, this case presents a considerable risk that an attorney would be held liable, not for thwarting testator intentions, but for properly carrying them out. Extending the *Auric* holding would frustrate testator intent and depart from the rationale of the *Auric* decision.

¶ 19.   In addition to protecting testator intent, maintaining narrow limits on attorney liability to third parties named in a will serves other public policies. First, it ensures that attorneys face fewer conflicts of interest in estate planning. Holding attorneys accountable to a nebulous class of third parties who are likely to be more concerned with their own hopes of inheritance than testator intent further compromises the duty an attorney owes to the client. *See Auric*, 111 Wis. 2d at 513; *Barcelo v. Elliott*, 923 S.W.2d 575, 578 (Tex. 1996). Second, a bright-line rule limiting the *Auric* exception to parties who are actually named in a will document facilitates predictability in estate planning. In contrast, allowing malpractice suits in every case where a third party can produce extrinsic evidence of contrary intent would likely result in inconsistent determinations and constant collateral attacks on probate proceedings.

¶ 20.   We acknowledge public policy concerns that cut in the other direction. For example, imposing broader liability has been said to make attorneys more careful in carrying out their responsibilities to their clients. *Auric*, 111 Wis. 2d at 513. Nonetheless, the many advantages of not extending the *Auric* exception here outweigh the few advantages of a broad extension of the holding of *Auric*. Moreover, significantly broadening the *Auric* exception as the Appellants ask would

be inconsistent with the holdings and rationale of both *Auric* and *Anderson*.

¶ 21. Both parties rely on authority from other jurisdictions, and we may look to foreign jurisdictions when no Wisconsin case is on point. *See State v. Frey*, 178 Wis. 2d 729, 740, 505 N.W.2d 786 (Ct. App. 1993). The Appellants assert that some jurisdictions allow extrinsic evidence to show testator intent in negligence actions "regardless of whether such intent is indicated in the will document." However, the Appellants cite no authority for this particular proposition. We are convinced that the weight of authority from other jurisdictions supports our decision not to extend the *Auric* exception to third parties not named in a will.

¶ 22. In *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So. 2d 1378, 1380 (Fla. 1993), the Supreme Court of Florida also declined to allow parties not identified in a will to maintain a cause of action against the drafting attorney, even in light of extrinsic evidence of testator intent. The *Espinosa* court concluded as follows:

> If extrinsic evidence is admitted to explain testamentary intent, as recommended by the petitioners, the risk of misinterpreting the testator's intent increases dramatically. Furthermore, admitting extrinsic evidence heightens the tendency to manufacture false evidence that cannot be rebutted due to the unavailability of the testator. For these reasons, we adhere to the rule that standing in legal malpractice actions is limited to those who can show that the testator's intent *as expressed in the will* is frustrated by the negligence of the testator's attorney.

*Espinosa*, 612 So. 2d at 1380 (emphasis added). Other states have also expressed doubt at relying on evidence

extrinsic to will documents in third-party malpractice actions. *See, e.g., Mieras v. DeBona,* 550 N.W.2d 202, 208–09 (Mich. 1996); *Barcelo,* 923 S.W.2d at 578.

¶ 23.   In sum, we conclude that when a plaintiff is named in an executed or unexecuted will, then she or he has standing to bring a negligence action against the drafting attorney. This rule will continue to hold attorneys accountable for faulty drafting, lack of diligence, or failure to execute wills according to the necessary formalities. In contrast, third parties claiming to be intended beneficiaries based only on evidence extrinsic to a will document are barred from proceeding with malpractice suits against the drafting attorney as a matter of law.

*By the Court.*—Judgment and order affirmed.