COURT OF APPEALS
DECISION
DATED AND FILED

August 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1402**

Cir. Ct. No. **2023CV43**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

JAYNE RUFENER RAUCH,

PLAINTIFF-APPELLANT,

V.

LANCE MCNAUGHTON, DUXSTAD, BESTUL & MCNAUGHTON, SC,
AND CONTINENTAL CASUALTY COMPANY,

DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Green County: FAUN MARIE PHILLIPSON, Judge. *Affirmed*.

Before Blanchard, Graham, and Taylor, JJ.

¶1 GRAHAM, J. Jayne Rufener Rauch brings a negligence claim against Attorney Lance McNaughton and his law firm, which provided legal

services to Rauch's father.[1]  The basis of Rauch's claim is that McNaughton negligently failed to implement a written directive from Rauch's father, which asked McNaughton to take the steps necessary to allow Rauch's father to amend his will to Rauch's benefit.

¶2      Wisconsin has a longstanding rule that a person does not have standing to sue another person's attorney for "acts committed in the exercise of [the attorney's] duties as an attorney." *Auric v. Continental Cas. Co.*, 111 Wis. 2d 507, 512, 331 N.W.2d 325 (1983).  A narrow exception to this rule, established in *Auric*, allows the beneficiary of a will to "maintain an action against an attorney who negligently drafted or supervised the execution of the will."  *Id.* at 509, 513-14.  The issue in this appeal is whether the circuit court properly dismissed Rauch's complaint with prejudice on the grounds that its factual allegations do not satisfy the *Auric* exception, and that Rauch therefore lacks standing to bring this negligence claim.  On appeal, we affirm the order dismissing Rauch's complaint.

## BACKGROUND

¶3      When considering a motion to dismiss for failure to state a claim, a court accepts as true all well-pled facts in the complaint and all reasonable inferences that can be drawn from those facts.  *Cattau v. National Ins. Servs. of Wis.*, 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756.  In some circumstances, a court may also consider facts from undisputed documents that are attached to the

---

[1] We refer to Attorney Lance McNaughton as "McNaughton" when describing Rauch's allegations about the actions that McNaughton did and did not take when representing Rauch's father.  As will be clear from context, we also generally use the singular noun "McNaughton" when referring to the arguments that McNaughton, his law firm, and their insurance company advance in the motions and briefs that they jointly filed in this litigation.

complaint or the motion to dismiss. *See **Soderlund v. Zibolski***, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015) (discussing the incorporation-by-reference doctrine); *see also* WIS. STAT. § 902.01 (2021-22) (authorizing a court to take judicial notice of "adjudicative facts" under certain circumstances).[2] The following summary of facts is taken from the allegations in Rauch's complaint and several documents that were attached to McNaughton's motion to dismiss, which the circuit court incorporated by reference into the complaint.

¶4 Rauch's father, Emil Rufener, retained McNaughton as an attorney in connection with various matters that included estate planning, and McNaughton's representation of Rufener continued until Rufener's death. In the course of the representation, McNaughton prepared various estate planning documents for Rufener, including power of attorney forms that named Rauch as Rufener's power of attorney for finances and property, and for healthcare. McNaughton also prepared a "Last Will and Testament," which we refer to as Rufener's "last will."

¶5 Rufener's last will named Rauch as the personal representative for his estate, and it provided instructions for distributing his farm and the remainder of his property after his death. In a section titled "FARM," it stated: "I give my one-half interest in my farm of 168 acres more or less … to St. Victor Church/St. Clare of Assisi Catholic Parish, of Monroe, Wisconsin." In a section titled "RESIDUE," it stated:

> A. To [named individuals who are not part of this lawsuit], each, I leave the sum of $125.00.

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version.

> B. I give all the remainder of my property to my daughter, Jayne Rauch. If Jayne predeceases me, the interest that would have passed to her had she survived me is given by right of representation to Jayne's lineal descendants who survive me.

Rufener's last will was executed in January 2021, and was in effect when Rufener died in December 2021.

¶6      In September 2021, several months before Rufener's death, Rauch, who was acting on Rufener's behalf, forwarded several documents to McNaughton. One of the documents was a typed letter bearing Rufener's signature, which indicated that Rufener wanted to amend his last will. This letter, which we refer to as "the directive," was addressed "To Whom It May Concern" and stated as follows:

> I would like to change my last will and testament:
>
> I am still willing my half of [the farm] to St. Victor's/St. Clare of Assisi Parish of Monroe but am changing it to stipulate that upon their most likely sale of this half, my daughter, Jayne, should be given $500,000 of the proceeds. They will have the remaining proceeds from the sale, which at approximately $10,000 per acre should be nearly $350,000.

Rauch also forwarded a separate letter that she had written to McNaughton, which stated in relevant part:

> Enclosed are copies of items I prepared for Dad per his request and that he signed yesterday.…
>
> Please let me know how/when we can update Dad's will per his enclosed signed revision.…
>
> As you may know, he was again in and out of the hospital last week, so we would appreciate it if you could give the enclosed revisions your attention in the near future.

4

¶7 The complaint alleges that McNaughton acknowledged receipt of the directive, and assured Rauch that he would promptly implement the requested change to Rufener's last will. However, McNaughton did not take the steps that would have allowed Rufener to amend his last will, and McNaughton also did not inform Rauch that he had failed to take these steps before Rufener's death.

¶8 Following Rufener's death in December 2021, a probate action was initiated and Rauch was named as the personal representative of the estate.[3] It is undisputed that Rufener's last will was admitted in the probate action and that Rauch distributed Rufener's assets according to its instructions.

¶9 Rauch then filed this lawsuit against McNaughton. As mentioned, Rauch alleges that McNaughton negligently failed to implement the request that McNaughton take steps that would allow Rufener to amend his last will, and that Rauch was financially damaged as a result. The complaint seeks compensatory damages.

¶10 McNaughton moved to dismiss Rauch's complaint for failure to state a claim. *See* WIS. STAT. § 802.06(2)(a)6. Along with his motion, McNaughton included copies of the directive and the electronic docket sheet from the probate proceedings.

¶11 For purposes of the motion to dismiss, McNaughton did not take any position on whether he failed to take the steps needed to allow Rufener to amend

---

[3] For purposes of this appeal, we take judicial notice of the electronic docket of the probate action, which is available on Wisconsin's Consolidated Court Automation Program, commonly known as CCAP. *See* WIS. STAT. § 902.01(2)(b); ***Kirk v. Credit Acceptance Corp.***, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (concluding that we may take judicial notice of the entry of records on CCAP).

his last will, or whether the failure to take those steps constitutes negligence. McNaughton's argument was instead that Rauch lacked standing to sue for acts committed within the scope of his representation of Rufener—specifically, that the complaint failed to allege facts that would satisfy the *Auric* exception to the rule against third-party standing. Citing *Auric*, 111 Wis. 2d 507, and *Beauchamp v. Kemmeter, Lathrop & Clark, LLP*, 2001 WI App 5, 240 Wis. 2d 733, 625 N.W.2d 297 (2000), McNaughton argued that Rauch could not rely on the directive to establish that Rufener intended to amend his will to further benefit her because the directive is "extrinsic" to Rufener's estate planning documents.[4]

¶12    In her response, Rauch did not object to the circuit court considering the documents that McNaughton had attached to his motion; indeed, she submitted additional documents (Rufener's last will and the letter Rauch sent to McNaugton regarding the directive) for the court's consideration. Rauch argued that the complaint plausibly alleges facts that satisfy the *Auric* exception, and alternatively, that factual disputes regarding Rufener's intent preclude a judgment of dismissal as a matter of law.

---

[4] McNaughton also argued that Rauch "waived" any claim for negligence based on the actions she took as Rufener's personal representative during the probate proceeding, which included submitting Rufener's last will to probate and failing to raise any issue regarding the directive in that proceeding. Rauch responded by arguing, among other things, that this defense was not the proper subject of a motion to dismiss. We do not further discuss this defense; like the circuit court, we decide this appeal on other dispositive grounds in McNaughton's favor. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (we need not address all arguments when one is dispositive).

¶13    Following McNaughton's reply, the circuit court issued a written order that granted McNaughton's motion to dismiss.[5]  The court concluded that the complaint fails to allege facts that would satisfy the *Auric* exception, and that Rauch therefore lacks standing to maintain a claim against McNaughton.  The court dismissed the complaint with prejudice, and Rauch appeals.

## DISCUSSION

¶14    We review de novo the circuit court's determination that Rauch's complaint fails to state a claim for lack of standing.  *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693 (sufficiency of complaint presents a question of law); *MacLeish v. Boardman & Clark, LLP*, 2019 WI 31, ¶21, 386 Wis. 2d 50, 924 N.W.2d 799 (standing presents a question of law).

¶15    "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint."  *Data Key Partners*, 356 Wis. 2d 665, ¶19 (citation omitted).  To state a claim, a complaint must plead facts that, if true, would entitle the plaintiff to relief for a violation of applicable law.  *Id.*, ¶21.  When considering a motion to dismiss, we accept as true all well-pled facts in the complaint and all

---

[5] The circuit court's written order references Rufener's last will and his power of attorney documents, the directive, and the letter Rauch drafted that accompanied that directive. Ordinarily, when ruling on a motion to dismiss for failure to state a claim, a court's review is limited to the four corners of the complaint. *See CTI of N.E. Wis., LLC v. Herrell*, 2003 WI App 19, ¶¶5-7, 259 Wis. 2d 756, 656 N.W.2d 794 (2002). An exception exists for documents that are referenced in the plaintiff's complaint and that are central to the plaintiff's claim, provided that the authenticity of such documents has not been disputed. *Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015). Here, neither party challenges the court's incorporation of these materials into the complaint, and both parties reference these documents in their briefing. We therefore assume without deciding that the court properly considered them when ruling on the motion to dismiss.

reasonable inferences to be drawn from those facts. *Cattau*, 386 Wis. 2d 515, ¶4. "A complaint should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that a plaintiff can prove in support of [the] allegations." *Watts v. Watts*, 137 Wis. 2d 506, 512, 405 N.W.2d 303 (1987). No relief can be granted to a plaintiff who lacks standing to bring the claim. *See Gottlieb v. City of Milwaukee*, 90 Wis. 2d 86, 90, 91-92, 279 N.W.2d 479 (1979).

¶16 Here, Rauch's complaint seeks to hold McNaughton and his law firm liable for negligently performing duties in the scope of the attorney-client relationship with Rufener. Generally, only an attorney's clients have standing to sue that attorney based on acts committed within the scope of the attorney-client relationship. *MacLeish*, 386 Wis. 2d 50, ¶26. "However, th[is] general rule is not without exceptions," *id.*, ¶28, and in *Auric*, 111 Wis. 2d 507, our supreme court carved out a limited exception that applies in certain estate planning matters.[6] Rauch contends that the allegations in her complaint satisfy the *Auric* exception, and that she therefore has standing to sue McNaughton for negligent representation of her father.

¶17 "The Auric exception is a narrow one[,]" *MacLeish*, 386 Wis. 2d 50, ¶32, and the only published case in which any Wisconsin appellate court has determined that the exception was satisfied was *Auric* itself. There, Auric sued his brother's attorney for negligently overseeing the execution of his brother's

---

[6] In addition to the *Auric* exception, Wisconsin courts have recognized that a non-client may sue an attorney based on alleged fraud, *see Auric v. Continental Casualty Co.*, 111 Wis. 2d 507, 512, 331 N.W.2d 325 (1983), and when the attorney knowingly "assists [a] client committing an unlawful act to the detriment of a third party," *see Tensfeldt v. Haberman*, 2009 WI 77, ¶¶59-68, 319 Wis. 2d 329, 768 N.W.2d 641.

will. *Auric*, 111 Wis. 2d at 510-11. Specifically, the attorney drafted a will that would have benefited Auric, and the brother signed the will in the attorney's presence. *Id.* However, the attorney failed to ensure that the will was signed by a second witness, and the probate court denied its admission on that basis. *Id.* The brother's prior will, which left nothing to Auric, was instead admitted in probate, and Auric inherited nothing from his brother as a result of the attorney's mistake. *Id.* When Auric filed suit, the attorney raised Auric's lack of standing as a defense. *Id.*

¶18    On review, our supreme court concluded that Auric had standing to maintain the negligence claim against his brother's attorney based on the facts of the case. *Id.* at 513-14. In so doing, the *Auric* court created an exception to the general rule of attorney nonliability to third parties. Under this exception, "the beneficiary of a will may maintain an action against an attorney who negligently draft[s] or supervise[s] the execution of the will" "resulting in a loss to a beneficiary named therein." *Id.* at 509, 514. The court founded the exception in the recognized "right to make a will and to have it carried out according to the testator's intentions" and the public policy interest of holding attorneys "accountable for [their] negligence." *Id.* at 513-14 ("Accountability should result in increasing the care with which attorneys draft wills and see to their execution.").

¶19    Cases subsequent to *Auric* have clarified the scope of the exception and its application. *See Anderson v. McBurney*, 160 Wis. 2d 866, 467 N.W.2d 158 (Ct. App. 1991); *Beauchamp*, 240 Wis. 2d 733; *Tensfeldt v. Haberman*, 2009 WI 77, 319 Wis. 2d 329, 768 N.W.2d 641; *MacLeish*, 386 Wis. 2d 50, ¶48 (concluding that "the narrow *Auric* exception to the rule of nonliability of an attorney to a non-client applies to the administration of an estate in addition to the

9

drafting and execution of a will"). For example, courts have concluded that the exception does not apply when the attorney's actions appeared to promote, rather than thwart, the decedent's intent. *See MacLeish*, 386 Wis. 2d 50, ¶32; *Tensfeldt*, 319 Wis. 2d 329, ¶74. This court has also rejected its application when the plaintiff who claims to be an intended beneficiary is not named as a beneficiary in a will or similar estate planning document and offers only extrinsic evidence purporting to show the decedent's intent to benefit the plaintiff. *See Beauchamp*, 240 Wis. 2d 733, ¶¶9, 18 ("When the only evidence a plaintiff relies on is extrinsic to the estate planning documents, the testator's intentions are at least as likely thwarted as not.").

¶20 The *Beauchamp* opinion is instructive here. There, the decedent had a final will that bequeathed a portion of his estate to his sister, but the decedent's sister passed away. *Id.*, ¶2. The decedent then met with his attorney, informed the attorney of his sister's death, and provided the attorney with a list of his sister's children. *Id.*, ¶¶2-3. The attorney did not amend the decedent's will before the decedent died, and the children were not named as beneficiaries in any "executed or unexecuted will or similar estate planning document." *See id.*, ¶9. After the decedent's death, his sister's children filed suit against the attorney, arguing that he was negligent in failing to prepare a new will that implemented the decedent's intention to benefit the children. *Id.*, ¶4. The circuit court granted summary judgment in the attorney's favor, concluding that the children did not have standing to maintain an action against the decedent's attorney. *Id.*

¶21 On appeal, the children argued that the *Auric* exception should be extended to their case. *Id.*, ¶8. We concluded that the children lacked standing because they could not clearly establish that the decedent intended to benefit them. *Id.*, ¶23. In contrast to *Auric*, in which the decedent's "intent was apparent from a

completed will that had merely been executed improperly," and in which the court "could look to an obvious technical error and conclude that 'it is clear that this will was intended to bring a direct benefit to the plaintiff,'" the children in ***Beauchamp*** relied solely on evidence of the decedent's intent to benefit them that was extrinsic to the estate planning documents. ***Id.***, ¶¶17-18 (citing ***Auric***, 111 Wis. 2d at 510-11, 514).

¶22     Rauch argues that the allegations in her complaint plausibly bring her claim within the ***Auric*** exception because, unlike the children in ***Beauchamp***, she was named as a beneficiary in Rufener's last will, and because Rufener's written directive provides undisputed evidence of his intent to amend the last will to further benefit Rauch. For reasons we now explain, we conclude that these allegations do not satisfy ***Auric*** and its progeny.

¶23     We begin with Rauch's argument about the directive—specifically, that the directive provides clear evidence, which cannot be disputed on a motion to dismiss, of Rufener's intent to benefit her. We agree that the written directive is evidence of Rufener's intent to amend his will, and that intent is undisputed for purposes of this motion to dismiss. However, as discussed, one of the requirements for the ***Auric*** exception is that the decedent's intent to benefit the plaintiff be clear from a "will or similar estate planning document," rather than from extrinsic evidence. *See **Beauchamp***, 240 Wis. 2d 733, ¶9.

¶24     Here, the directive is plainly not a will (Rauch does not argue otherwise), and Rauch does not develop an argument that the directive constitutes a "similar estate planning document." Instead, Rauch contends that the directive is not "extrinsic" in the same sense as the extrinsic evidence that was at issue in ***Beauchamp***, and that the directive is "no more 'extrinsic' than the drafted but

11

improperly executed will in *Auric*." We disagree. We acknowledge that the directive at issue in this case is a written document that appears to have been signed by Rufener, and in that respect, it may be more compelling evidence of Rufener's intent than the extrinsic evidence relied on by the plaintiffs in *Beauchamp*. However, the directive is not the same as the not fully executed will at issue in *Auric*, in that the directive was never meant to be a legally enforceable document in and of itself. Instead, by its terms, the directive expressly acknowledges that additional steps, including the drafting and execution of a new last will, would need to take place to carry out the intent expressed in the directive.

¶25 We therefore conclude that the directive is extrinsic evidence that expresses an intention that Rufener had, at least at one point before his death, to amend his will in order to bequeath an additional $500,000 to Rauch. Thus, the directive fails to satisfy the standard set forth in *Beauchamp* that the decedent's intent to benefit the plaintiff be clearly expressed in a will or other estate planning document.

¶26 We now turn to Rauch's argument about Rufener's last will. Rauch argues that, even if the directive is extrinsic evidence of Rufener's intent to benefit her, she does not rely *solely* on extrinsic evidence. Rauch notes that, unlike the plaintiffs in *Beauchamp*, she is in fact named as a beneficiary in a will—specifically Rufener's last will, which bequeaths a portion of Rufener's estate to Rauch. Rauch asserts that the fact that she was named as a beneficiary in Rufener's last will coupled with the directive is sufficient to confer standing pursuant to the *Auric* exception.

¶27 We disagree. To be sure, *Beauchamp* contains some language that, when read in isolation, might suggest that merely being named as a beneficiary in

*any* will or estate planning document suffices to confer standing under the *Auric* exception.[7] However, when read in context and alongside *Auric*, which created the exception, *Beauchamp* and other cases plainly require a plaintiff to be named as a beneficiary in *the* specific "will or similar estate planning document" that the plaintiff alleges was negligently drafted, executed, or administered, thereby thwarting the clear intent of the decedent as expressed in *that* will or estate planning document. *See Auric*, 111 Wis. 2d at 509-10, 514 ("*the beneficiary of a will* may maintain an action against an attorney who negligently draft[s] or supervise[s] the execution of *the will*" which "result[s] in a loss to *a beneficiary named therein*" (emphasis added)); *Beauchamp*, 240 Wis. 2d 733, ¶23 ("when a plaintiff is *named in an executed or unexecuted will*, then he or she has standing to bring a negligence action against *the drafting attorney*" (emphasis added)); *see also Tensfeldt*, 319 Wis. 2d 329, ¶73 ("a plaintiff must be named in a will in order to bring a negligence action against the attorney *who negligently drafted or executed the will*," and "[b]eing named in *the instrument* is a necessary but not a sufficient condition" (emphasis added)).

¶28 As applied here, although Rauch was named as a beneficiary in Rufener's last will, she does not allege that McNaughton's negligence thwarted the intent that Rufener expressed in that last will. *See MacLeish*, 386 Wis. 2d 50, ¶32; *Tensfeldt*, 319 Wis. 2d 329, ¶74. If anything, the allegations in the complaint

---

[7] *See Beauchamp v. Kemmeter, Lathrop & Clark, LLP*, 2001 WI App 5, ¶9, 240 Wis. 2d 733, 625 N.W.2d 297 (2000) ("We hold that third parties may not maintain a cause of action for malpractice against the drafting attorney unless they are named in an executed or unexecuted will or similar estate planning document."); *id.*, ¶16 ("Like the appellants, the plaintiff in *Anderson* [*v. McBurney*, 160 Wis. 2d 866, 871-72, 467 N.W.2d 158 (Ct. App. 1991),] was unnamed in any will[.]"); *id.*, ¶17 ("The Appellants have not alleged that they were ever named in any estate planning document.").

and incorporated materials establish that Rufener's intent, as expressed in his last will, was properly effectuated—the will was, after all, admitted in probate and administered according to its terms.

¶29     In sum, because Rufener's intent to bequeath Rauch an additional $500,000 in sale proceeds is not expressed in a will or similar estate planning document, the allegations in the complaint do not satisfy the *Auric* exception. We acknowledge that this is a harsh result, given the particular factual allegations here, which we assume to be true at this stage of the proceeding. However, as we have explained, the *Auric* exception to the general rule of attorney nonliability is narrow and, to fit within the exception, Rauch must be able to demonstrate Rufener's intent to bequeath an additional $500,000 to her through a will or other estate planning document that expresses that testamentary intent. Rufener's complaint does not allege the existence of any such document. Thus, the complaint fails to state a claim unless the narrow exception is expanded, and to expand the exception, we would have to disregard language in cases including *Auric* and *Beauchamp*, which we cannot do. *See Cook v. Cook*, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (the court of appeals cannot disregard established Wisconsin precedent).

¶30     Having concluded that Rauch lacks standing to maintain a claim, we address her remaining arguments.

¶31     Rauch contends that her complaint should have survived the motion to dismiss, and that the circuit court should have allowed her to develop the record in discovery. She observes that other cases involving the *Auric* exception were resolved based on motions for summary judgment or after a trial on stipulated facts. She further argues that the *Auric* exception involves considerations of

14

public policy, and that determinations of this type "should only be made on a complete factual record," developed on summary judgment or at a trial. She cites *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 464 N.W.2d 667 (1991), which cautions against limiting liability based on public policy concerns—that is, when "the imposition of liability 'would shock the conscience of society'"—if the facts underlying complex issues in a case have not been developed. *See id.* at 534-36 (quoted source omitted). This citation to *Rolph* is inapt—here, the legal standards that we apply to the allegations of fact have already been set forth in *Auric* and related case law. For purposes of the motion to dismiss, our obligation is to assume the truth of all of Rauch's factual allegations and then apply the existing legal standards to those allegations. And for reasons we have explained, when we do that we conclude that those allegations fail to establish the requirements of the *Auric* exception as a matter of law.

¶32    Rauch also contends she should be granted leave to file an amended complaint on remand, pursuant to WIS. STAT. § 802.09(1), that would "set[] forth additional allegations to provide more factual context." We reject this argument for two reasons. First, Rauch has not asked the circuit court for the opportunity to amend her complaint. *Bishop v. City of Burlington*, 2001 WI App 154, ¶8, 246 Wis. 2d 879, 631 N.W.2d 656 (a party "must raise an issue with sufficient prominence" in the circuit court to alert the court "that it is being called upon to make a ruling"). Second, the additional factual allegations that Rauch indicates she would add to an amended complaint would, at most, constitute additional extrinsic evidence of Rufener's intent to bequeath her $500,000 in sale proceeds,

and would accordingly do nothing to correct the problem that we have identified with the allegations in the complaint.[8]

## CONCLUSION

¶33 For the reasons set forth above, we conclude that Rauch lacks standing to maintain a claim against McNaughton. We therefore affirm the circuit court's order dismissing Rauch's complaint.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.

---

[8] Specifically, Rauch asserts that an amended complaint would include: "additional allegations demonstrating the context in which [Rufener's last will] was executed"; Rauch's "role in providing assistance to her elderly father and her function as his Power of Attorney for both finance and health care"; "details concerning her father's health condition, including his residence in a care facility"; the role that McNaughton played "in assisting with other matters concerning ongoing financial disputes with other family members"; "more details" regarding the communications between Rufener and McNaughton about the directive; "the condition of [Rufener's] health between" the date of the directive and the date of his death; "the circumstances under which … Rauch learned that the requested change in [Rufener's last will] had not been made"; and "the ultimate disposition" of the farm in the probate action.

Separately, Rauch also asserts that the circuit court improperly made findings about Rufener's intent, and that its written decision "implies" that Rufener's "signature on the written request may not have been authentic because it was not 'witnessed' or 'otherwise verified.'" We disagree with Rauch's interpretation of the court's order, but in any event, we review the sufficiency of Rauch's complaint de novo, with no deference to the circuit court. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693.