# Supreme Court of Wisconsin

| | |
|---|---|
| CASE No.: | 2016AP2491 |
| COMPLETE TITLE: | David Macleish, Hayden Macleish, Kay Macleish and Robin Macleish, |
| | <div align="center">Plaintiffs-Appellants-Petitioners,</div> |
| | <div align="center">v.</div> |
| | Boardman & Clark LLP, Quale Hartmann, S.C., Continental Casualty Company and OneBeacon Insurance Company, |
| | <div align="center">Defendants-Respondents.</div> |

<div align="center">

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 381 Wis. 2d 471, 915 N.W.2d 455
(2018 – unpublished)

</div>

| | |
|---|---|
| OPINION FILED: | March 26, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 24, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Josann M. Reynolds |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed by *Douglas W. Kammer*, and *Kammer Law Office, S.C.*, Portage. There was an oral argument by *Douglas W. Kammer*.

For the defendants-respondents, there was a brief filed by *Bruce A. Schultz*, *Karen M. Gallagher*, and *Coyne, Schultz, Becker & Bauer, S.C.*, Madison. There was an oral argument by *Bruce A. Schultz*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP2491
(L.C. No. 2012CV3621)

STATE OF WISCONSIN         :        IN SUPREME COURT

**David MacLeish, Hayden MacLeish, Kay MacLeish and Robin MacLeish,**

        **Plaintiffs-Appellants-Petitioners,**

    **v.**

**Boardman & Clark LLP, Quale Hartmann, S.C., Continental Casualty Company and OneBeacon Insurance Company,**

        **Defendants-Respondents.**

**FILED**

**MAR 26, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J.   The petitioners, collectively the MacLeish children,[1] seek review of an unpublished court of appeals decision affirming the circuit court's order dismissing their legal malpractice claim against the law firm that

---

[1] The petitioners are David, Hayden, Kay, and Robin MacLeish.

administered their father's estate.[2] The court of appeals assumed without deciding that the MacLeish children could bring a claim for legal malpractice based on the negligent administration of an estate. It nevertheless affirmed the circuit court's dismissal of the claim against the Boardman law firm[3] because the children failed to demonstrate that the firm's alleged negligent administration of their father's estate thwarted their father's clear testamentary intent.

¶2 The MacLeish children contend first that we should alter the test for standing to permit third party non-clients to bring legal malpractice actions. Specifically, they argue that this court should abandon Auric v. Continental Cas. Co., 111 Wis. 2d 507, 331 N.W.2d 325 (1983),[4] and instead adopt the Restatement (Third) of the Law Governing Lawyers § 51 (2000). In the event we do not adopt the Restatement, the parties advance that we should reaffirm the Auric exception to

_____

[2] MacLeish v. Boardman & Clark LLP, No. 2016AP2491, unpublished slip op. (Wis. Ct. App. Mar. 15, 2018) (per curiam) (affirming order of the circuit court for Dane County, Josann M. Reynolds, Judge).

[3] There are four respondents in this case: Boardman & Clerk, LLP, Quale Hartmann, S.C., Continental Casualty Company, and OneBeacon Insurance Company. We refer to them collectively as "Boardman."

[4] In Auric, we determined that "the beneficiary of a will may maintain an action against an attorney who negligently drafted or supervised the execution of a will even though the beneficiary is not in privity with that attorney." Auric v. Continental Cas. Co., 111 Wis. 2d 507, 509, 331 N.W.2d 325 (1983).

nonliability and apply it beyond claims of negligent will drafting and execution to also encompass a claim of negligent administration of an estate.

¶3 Alternatively, applying the Auric exception, the MacLeish children further argue that the court of appeals erred when it determined that the children failed to demonstrate that their father's clear testamentary intent was thwarted. According to the children, Boardman's failure to construe the will to create a trust for their mother for her lifetime with a remainder interest to them caused them to lose significant tax benefits and incur additional probate expenses.

¶4 We reject the MacLeish children's invitation to adopt the Restatement (Third) of the Law Governing Lawyers § 51 (2000). The Auric exception remains the operative standard.

¶5 We conclude that the narrow Auric exception to the rule of nonliability of an attorney to a non-client applies to the administration of an estate in addition to the drafting and execution of a will. That is, a non-client who is a named beneficiary in a will has standing to sue an attorney for malpractice if the beneficiary can demonstrate that the attorney's negligent administration of the estate thwarted the testator's clear intent.

¶6 Applying Auric to the facts of this case, we determine that Charles MacLeish's clear testamentary intent was not thwarted by any alleged negligence on the part of Boardman. As a result, we conclude that the MacLeish children's claim against Boardman for legal malpractice was properly dismissed.

3

¶7 Accordingly, we affirm the decision of the court of appeals.

I

¶8 Charles MacLeish died in April of 1984. His one-page will, which was drafted in 1967 by Attorney James Hill, provided:

I, Charles MacLeish, of the Town of Caledonia, Columbia County, Wisconsin, do make, publish and declare this instrument as my Last Will and Testament.

FIRST: I direct the payment of my just debts and funeral expenses.

SECOND: All the rest, residue and remainder of my property I give, devise and bequeath to my beloved wife, Thelma MacLeish, to use the income and so much of the principal as she may need for her care, comfort and support during her lifetime, meaning and intending hereby to give to my wife, Thelma MacLeish, the life use of the income and so much of the principal as she may need.

THIRD: At the death of my wife, Thelma, I direct that the remainder of my estate in existence at that time be placed in trust until my youngest child shall have completed his college education through a Bachelor's degree or indicated in writing to the trustee that he did not desire any further education, at which time said trust shall terminate and the remainder of my estate shall be divided equally between my four children.

FOURTH: I nominate and appoint my beloved wife, Thelma MacLeish, executrix of this my Last Will and Testament and request of her that she employ the firm of Hill, Miller & Quale in the settlement of my estate.

IN WITNESS THEREOF, I have hereunto set my hand and seal this 1st day of February, 1967.

4

¶9 Attorney Forrest Hartmann, a former partner of the will's drafter, and subsequently a member of the Boardman firm, handled the administration of the estate. He advised Thelma MacLeish, Charles's wife, to claim full use of the federal estate tax marital deduction.

¶10 Thelma followed Attorney Hartmann's advice and treated all the assets of Charles's estate as though they passed directly to her. She also claimed a federal estate tax marital deduction for those assets.

¶11 The effect of this action was that Charles's estate was not subject to estate tax in 1984. Instead, the assets that had been in Charles's estate would be subject to estate tax at the time of Thelma's death.

¶12 In February of 2008, Thelma died. As a result of the administration of Charles's estate twenty-four years earlier, Thelma's estate included those assets that had passed from Charles's estate to Thelma. Thelma's estate incurred a federal estate tax of $261,343.[5]

¶13 Dissatisfied with the tax that had been levied on Thelma's estate and with the additional probate expenses, the MacLeish children brought suit for legal malpractice against

---

[5] Thelma was a good steward of the funds that had been in Charles's estate. The complaint alleges that at the time of Charles's death, his estate was valued at approximately $608,000. At Thelma's death, the amount had grown to approximately $2.7 million.

Boardman. They asserted that the tax and expenses would have been avoided if the estate had been administered differently.

¶14 Specifically, the MacLeish children alleged that there would have been no estate tax if, in 1984, a trust had been imposed over Charles's assets. In their complaint, they allege that "the will of Charles MacLeish should have been construed to create a trust for the benefit of Thelma MacLeish for her lifetime, with a remainder to the four plaintiffs in this action." They further allege that absent such a trust, "the property in which these plaintiffs had a remainder interest was delivered to Thelma MacLeish. . . . The estate was probated as though the plaintiffs had a future interest for Wisconsin Inheritance Tax purposes, but treated for federal taxes as if the property were devised to Thelma MacLeish absolutely (instead of an interest in a trust or other limited interest) and free of any trust or ownership interest of these plaintiffs."

¶15 The complaint additionally detailed the MacLeish children's view that Boardman's method of administration "wasted" Charles's unified credit and resulted in "entirely avoidable" estate tax on Thelma's estate. Accordingly, in the MacLeish children's estimation, the tax and additional expenses incurred on Thelma's estate was the result of Boardman's negligent administration of Charles's estate.

¶16 Moving for summary judgment, Boardman contended that Charles's will unambiguously does not call for the creation of a

trust.[6] It argued that Attorney Hartmann did just as the will instructs and that Charles's testamentary intent was not thwarted by Attorney Hartmann's administration of the will. As a result, Boardman asserted that the MacLeish children cannot maintain a legal malpractice claim pursuant to Auric, 111 Wis. 2d 507.

¶17 The circuit court agreed and granted summary judgment to Boardman. Applying the rule that "a third-party beneficiary of a will may maintain a legal malpractice action for negligence against an attorney only where the beneficiary can show the attorney's actions thwarted the decedent's testamentary intent[,]" it concluded that Charles's intent was not thwarted.

¶18 In the circuit court's view, Charles's will "did not create a trust as a matter of law, nor did he intend to create a trust." The circuit court observed that the MacLeish children "carry the burden of presenting evidence that Charles' testamentary intent was thwarted before their negligence claim

_____

[6] Prior proceedings at the circuit court and court of appeals are not relevant to the determination before us. Before the summary judgment motion that is the subject of this appeal was filed, the circuit court granted summary judgment to Boardman, determining that the MacLeish children did not present sufficient evidence of damages to raise a genuine issue of material fact on this element of their negligence cause of action. The court of appeals reversed, concluding that there was a genuine factual dispute on damages. MacLeish, No. 2014AP575, unpublished slip op., ¶2. After remand to the circuit court, Boardman again moved for summary judgment motion, filing the motion we address here.

7

can be presented to a trier of fact. This they have failed to do."

¶19 The MacLeish children appealed, and the court of appeals affirmed. It framed its analysis by assuming without deciding that the Auric exception to attorney nonliability is applicable not only to the negligent drafting of a will but to the negligent administration of a decedent's estate where the alleged negligence thwarts the decedent's clear testamentary intent. MacLeish v. Boardman & Clark LLP, No. 2016AP2491, unpublished slip op., ¶10 (Wis. Ct. App. Mar. 15, 2018).

¶20 Applying this assumption, the court of appeals concluded that "Charles's will did not create a trust, as argued by the MacLeish siblings, and therefore by definition the attorney's failure to read the will as creating a trust could not have thwarted any clear intent of Charles." Id., ¶13. It determined that the MacLeish children can point to no "language in the will [that] manifests an intent by Charles that a trustee be appointed, that the assets of Charles's estate be held by a trustee for the benefit of Thelma, or that enforceable duties with respect to those assets be imposed upon a trustee." Id., ¶16.

II

¶21 We are asked to review whether the MacLeish children have standing to bring this legal malpractice action against Boardman. A determination of standing presents a question of law reviewed independently of the determinations rendered by the

8

circuit court and court of appeals. State v. Popenhagen, 2008 WI 55, ¶23, 309 Wis. 2d 601, 749 N.W.2d 611.

¶22 We also examine the court of appeals' determination that the circuit court properly granted summary judgment to Boardman on the ground that the MacLeish children did not establish that Charles's clear testamentary intent was thwarted. We review a summary judgment decision independently of the determinations rendered by the circuit court and court of appeals, applying the same methodology as the circuit court. SECURA Ins. v. Lyme St. Croix Forest Co., LLC, 2018 WI 103, ¶15, 384 Wis. 2d 282, 918 N.W.2d 885. Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

¶23 In our review, we interpret Charles's will. When the facts are undisputed, the interpretation of a will is a question of law that we review without deference to the circuit court or court of appeals. McCarville v. McWilliams (Matter of McWilliams' Estate), 78 Wis. 2d 328, 335 n.5, 254 N.W.2d 277 (1977).

III

¶24 We begin by addressing the legal standard for standing of a non-client to bring suit against an attorney for malpractice. In doing so, we consider the MacLeish children's invitation to adopt the Restatement (Third) of the Law Governing Lawyers § 51. We further consider whether the Auric exception to nonliability may be applied to a claim for negligent

9

administration of an estate. Finally, we apply our chosen standard to the facts of this case.

A

¶25 The MacLeish children attempt to bring suit against Boardman, which they allege negligently administered their father's estate. Charles, and not the MacLeish children, was Boardman's client.

¶26 Generally, an attorney cannot be held liable to a third party for any act committed within the scope of the attorney-client relationship. Yorgan v. Durkin, 2006 WI 60, ¶27, 290 Wis. 2d 671, 715 N.W.2d 160 (citations omitted); Green Spring Farms v. Kersten, 136 Wis. 2d 304, 321, 401 N.W.2d 816 (1987). Stated differently, "only an attorney's clients may normally sue that attorney for malpractice." Beauchamp v. Kemmeter, 2001 WI App 5, ¶7, 240 Wis. 2d 733, 625 N.W.2d 297.

¶27 This rule serves to protect the attorney-client relationship. To extend an attorney's liability to third parties not in privity with the attorney may create damaging effects on the defendant attorney's relationship with the client. Green Spring Farms, 136 Wis. 2d at 329. "That is, if an attorney must be responsible not only to his or her own client but also to a third-party nonclient, a potential conflict of interest may be inevitable, thus impairing an attorney's ethical obligations to represent his or her own client zealously within the bounds of the law." Id.

¶28 However, the general rule is not without exceptions. See Newhouse by Skow v. Citizens Sec. Mut. Ins. Co., 176

10

Wis. 2d 824, 841, 501 N.W.2d 1 (1993) (explaining that "the well established rule of law in Wisconsin is that <u>absent fraud or certain public policy considerations</u>, an attorney is not liable to third parties for acts committed in the exercise of his duties as an attorney") (emphasis added). In certain estate planning matters, this court has carved out a limited exception. <u>Beauchamp</u>, 240 Wis. 2d 733, ¶7; <u>see</u> <u>Auric</u>, 111 Wis. 2d at 509.

¶29 In <u>Auric</u>, the testator's attorney failed to have his secretary sign the will as a witness, resulting in the will being invalid. <u>Auric</u>, 111 Wis. 2d at 510. A beneficiary of the invalid will brought a negligence claim against the attorney. <u>Id.</u> at 511.

¶30 The circuit court ruled that the attorney could not be liable because there was no privity between the beneficiary and the attorney. <u>Id.</u> at 511-12. On bypass, this court reversed, determining that "the beneficiary of a will may maintain an action against an attorney who negligently drafted or supervised the execution of the will even though the beneficiary is not in privity with that attorney." <u>Id.</u> at 509.

¶31 This exception to the general rule of attorney nonliability to non-clients provides for "one way to make an attorney accountable for his negligence." <u>Id.</u> at 513. "It is consistent with and promotes this state's longstanding public policy supporting the right of a testator to make a will and have its provisions carried out." <u>Id.</u> at 514. Therefore, "[p]ublic policy supports the imposition of liability on an attorney who acts negligently in drafting or supervising the

11

execution of a will resulting in a loss to a beneficiary named therein." Id.

¶32 The Auric exception is a narrow one. Tensfeldt v. Haberman, 2009 WI 77, ¶72, 319 Wis. 2d 329, 768 N.W.2d 641. It is properly applied when "there is no question that the decedent's intent was thwarted due to the attorney's negligence." Id. "In these cases, if the court did not allow the third party beneficiaries to bring suit, there would be no one to vindicate the client's expectation of competent representation because by definition, the client is deceased." Id. Accordingly, to establish third party beneficiary standing, "[t]he third party beneficiary must be able to establish that the attorney's failure thwarted the decedent's clear intent." Id., ¶73 (citing Auric, 111 Wis. 2d at 513).

¶33 The MacLeish children argue that this court should abandon the Auric exception to attorney nonliability to non-clients. They instead urge this court to adopt the Restatement (Third) of the Law Governing Lawyers § 51 to control standing to bring a legal malpractice claim.

¶34 Entitled "Duty of Care to Certain Nonclients," § 51 of the Restatement provides:

> For purposes of liability under § 48,[7] a lawyer owes
> a duty to use care within the meaning of § 52[8] in
> each of the following circumstances:

---

[7] Restatement (Third) of the Law Governing Lawyers § 48 (2000), denominated "Professional Negligence——Elements and Defenses Generally," provides:

(continued)

12

(1)   to a prospective client, as stated in § 15;

(2)   to a nonclient when and to the extent that:

   (a)   the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and

   (b)   the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection;

(3)   to a nonclient when and to the extent that:

   (a)   the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;

   (b)   such a duty would not significantly impair the lawyer's performance of obligations to the client; and

   (c)   the absence of such a duty would make enforcement of those obligations to the client unlikely; and

---

In addition to the other possible bases of civil liability described in §§ 49, 55, and 56, a lawyer is civilly liable for professional negligence to a person to whom the lawyer owes a duty of care within the meaning of § 50 or § 51, if the lawyer fails to exercise care within the meaning of § 52 and if that failure is a legal cause of injury within the meaning of § 53, unless the lawyer has a defense within the meaning of § 54.

[8] Section 52 of the Restatement (Third) of the Law Governing Lawyers, entitled "The Standard of Care," sets forth in relevant part: "(1) For purposes of liability under §§ 48 and 49, a lawyer who owes a duty of care must exercise the competence and diligence normally exercised by lawyers in similar circumstances."

(4) to a nonclient when and to the extent that:

  (a) the lawyer's client is a trustee, guardian, executor, or fiduciary acting primarily to perform similar functions for the nonclient;

  (b) the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud or (ii) the lawyer has assisted or is assisting the breach;

  (c) the nonclient is not reasonably able to protect its rights; and

  (d) such a duty would not significantly impair the performance of the lawyer's obligations to the client.

¶35 The MacLeish children contend that the Restatement presents a better approach than the well-established general rule of nonliability and the Auric exception. They argue that broad immunity for attorneys from claims by non-clients is bad public policy. In their view, the Restatement provides a workable standard that narrows such immunity.

¶36 Adopting the Restatement as the MacLeish children urge would significantly change the general rule of attorney nonliability to non-clients. In the context of this case, adopting the MacLeish children's position would result in the elimination of the specific requirement that a third party beneficiary demonstrate that the testator's clear intent was thwarted in order to proceed with a legal malpractice claim.

14

¶37 We decline to displace the Auric line of cases and replace it with the Restatement (Third) standard. There are several reasons for this determination.[9]

¶38 First, the Auric exception and cases interpreting it are grounded in the constitutional right to make a will and have it carried out according to the testator's intentions. See Auric, 111 Wis. 2d at 513. Extending or rewriting the exception "presents a considerable risk that an attorney would be held liable, not for thwarting testator intentions, but for properly

---

[9] We further observe that our rejection of the Restatement (Third) of the Law Governing Lawyers § 51 is not out of step with the determinations of courts in our sister states. The Restatement has not been widely adopted, although few states have squarely addressed the issue.

Some states have expressly declined to adopt the Restatement. See Stewart Title Guar. Co. v. Sterling Sav. Bank, 311 P.3d 1, ¶14 n.2 (Wash. 2013); see also Chem-Age Indus., Inc. v. Glover, 652 N.W.2d 756, ¶¶33-35 (S.D. 2002) (recognizing that the Restatement is not binding and concluding that "even if we were to recognize the third party beneficiary exception, plaintiffs have brought forth insufficient evidence to invoke it here"). Arizona, on the other hand, has explicitly adopted the Restatement formulation. Paradigm Ins. Co. v. Langerman Law Offices, PA, 24 P.3d 593, ¶29 (Ariz. 2001) (en banc).

Others have looked to the Restatement for guidance or support, see Moore v. Anderson Zeigler Disharoon Gallagher & Gray, 135 Cal. Rptr. 2d 888, 897 (Cal. Ct. App. 2003) (stating that the court's conclusion is "reinforced" by the Restatement), or have articulated that the Restatement is correct in factual situations significantly different from that presented here. Pedersen v. Barnes, 139 P.3d 552, 557 (Alaska 2006) (agreeing with one of the parties "that section 51 of the Restatement (Third) of the Law Governing Lawyers articulates the correct standard for determining the circumstances in which a guardian's lawyer owes a duty to the guardian's ward").

15

carrying them out."  Beauchamp, 240 Wis. 2d 733, ¶18.  Adopting the Restatement would unmoor the exception to nonliability from its constitutional foundation and potentially open liability of attorneys to third parties in a variety of contexts beyond the facts of this case.

¶39 Second, when presented with the opportunity in the past, we have been reluctant to expand attorney liability to non-clients in the estate planning context.  For example, in Tensfeldt we concluded that "[e]xtending the Auric exception to attorneys who give negligent advice stretches the exception too far."  Tensfeldt, 319 Wis. 2d 329, ¶77.  The court was explicit in its instruction that the Auric exception "is a narrow one." Id., ¶72.

¶40 The court of appeals has correctly followed suit.  For example, in Beauchamp, it favored narrow attorney liability by determining that "third parties may not maintain a cause of action for malpractice against the drafting attorney unless they are named in an executed or unexecuted will or similar estate planning document."  Beauchamp, 240 Wis. 2d 773, ¶9; see also Anderson by Smithson v. McBurney by Stebnitz, 160 Wis. 2d 866, 872-73, 467 N.W.2d 158 (Ct. App. 1991).

¶41 Third, the Auric standard is consistent with the ethical duties of estate planning attorneys.  As the court of appeals in Beauchamp observed, maintaining narrow limits on attorney liability to third parties "ensures that attorneys face fewer conflicts of interest in estate planning.  Holding attorneys accountable to a nebulous class of third parties who

16

are likely to be more concerned with their own hopes of inheritance than testator intent further compromises the duty an attorney owes to the client." Beauchamp, 240 Wis. 2d 733, ¶19.

¶42 Accordingly, we reject the MacLeish children's invitation to adopt the Restatement (Third) of the Law Governing Lawyers § 51. The Auric exception remains the operative standard.

B

¶43 Having determined that the Auric exception is the operative standard, we turn now to examine whether the exception applies to the precise claims made here. Specifically, we must determine whether the narrow exception can be applied to the alleged negligent administration of a will in addition to its drafting and execution.

¶44 As the court of appeals observed, we have not previously addressed whether the Auric exception allows for a third party beneficiary to bring a legal malpractice action against an attorney who negligently administers an estate, as opposed to an attorney who negligently drafts a will. MacLeish, No. 2016AP2491, unpublished slip op., ¶10. However, for the duration of this case, both parties, the circuit court, and the court of appeals have seemingly operated under the assumption that it does or should apply. We now take this opportunity to clarify that the Auric exception applies to a claim that an attorney negligently administers an estate.

¶45 Our determination is supported by both the language of Auric and the public policies on which it is premised.

17

Specifically, the Auric court wrote that "[i]n this state, there is a constitutional right to make a will and to have it carried out according to the testator's intentions."  Auric, 111 Wis. 2d at 513 (emphasis added); see Biart v. First Nat'l Bank of Madison (In re Ogg's Estate), 262 Wis. 181, 186, 54 N.W.2d 175 (1952).  "This right reflects a strong concern that people should be as free as possible to dispose of their property upon their death."  Auric, 111 Wis. 2d at 513.

¶46  The constitutional right to make a will and have it carried out according to the testator's intentions is implicated by the administration of a will just as it is by the will's drafting.  Accordingly, the same public policies that drove the Auric decision apply with equal force here.  See Auric, 111 Wis. 2d at 514 ("It is consistent with and promotes this state's longstanding public policy supporting the right of a testator to make a will and have its provisions carried out.").

¶47  We emphasize, however, that the strictures recognized in Tensfeldt apply equally to a malpractice claim based on negligent administration as to a claim based on negligent drafting.  Namely, "[t]he third party beneficiary must be able to establish that the attorney's failure thwarted the decedent's clear intent."  Tensfeldt, 319 Wis. 2d 329, ¶73.

¶48  We therefore conclude that the narrow Auric exception to the rule of nonliability of an attorney to a non-client applies to the administration of an estate in addition to the drafting and execution of a will.  That is, a non-client who is a named beneficiary in a will has standing to sue an attorney

18

for malpractice if the beneficiary can demonstrate that the attorney's negligent administration of the estate thwarted the testator's clear intent.

IV

¶49 Having determined that the Auric exception is applicable to claims of negligent administration of an estate, we turn next to apply Auric to the facts of this case to determine if the MacLeish children can proceed with their claim against Boardman despite their status as non-clients.

¶50 In order to proceed with their claims pursuant to the Auric exception, the MacLeish children must demonstrate that Charles's clear testamentary intent was thwarted by Boardman's alleged negligence. See supra, ¶48; Tensfeldt, 319 Wis. 2d 329, ¶73. Stated differently, the proper threshold question is whether the third party beneficiaries, here the MacLeish children, are attempting to stand in for the deceased testator to ensure that his testamentary intent is fulfilled. See Tensfeldt, 319 Wis. 2d 329, ¶72.

¶51 The MacLeish children contend that Boardman's negligent administration of Charles's will thwarted Charles's testamentary intent. Their complaint alleges that "the will of Charles MacLeish should have been construed to create a trust for the benefit of Thelma MacLeish for her lifetime, with a remainder to the four plaintiffs in this action." They further allege that Boardman was negligent "[f]or probating Charles MacLeish's Estate without setting up such a trust, though the same was suggested by the language of the will . . . ." Because

19

no trust was imposed, they argue, substantial and avoidable estate tax was paid from Thelma's estate and additional probate expenses were incurred.

¶52 Resolving the question of whether Charles's clear testamentary intent was thwarted requires the examination of Charles's will to determine whether it requires the imposition of a trust. Our aim in construing a will is to determine the testator's intent. Breese v. Bennett (In re Breese's Estate), 7 Wis. 2d 422, 425, 96 N.W.2d 712 (1959). The best evidence of the testator's intent is the language of the document itself. Madison Gen. Hosp. Med. & Surgical Found., Inc. v. Volz (In re Ganser's Estate), 79 Wis. 2d 180, 187, 255 N.W.2d 483 (1977); Caflisch v. Staum (In re Estate of Kuhn), 2000 WI App 113, ¶6, 235 Wis. 2d 210, 612 N.W.2d 385 (citation omitted). When the will is unambiguous, there is no need to look further to determine the intent of the testator, as it is clearly stated in the will. Id.

¶53 The formation of a trust requires three elements: (1) trustees who hold property and are subject to equitable duties to deal with the property for the benefit of others; (2) beneficiaries to whom the trustees owe these equitable duties; and (3) trust property that is held by the trustees for the beneficiaries. Wisconsin Med. Soc'y, Inc. v. Morgan, 2010 WI 94, ¶62, 328 Wis. 2d 469, 787 N.W.2d 22 (citing Sutherland v. Pierner, 249 Wis. 462, 467, 24 N.W.2d 883 (1946)).

¶54 "[I]n order to create a trust the intention of the testator must be manifest and mandatory." Paine v. Shero (In re

20

Doe's Will), 192 Wis. 333, 335, 212 N.W. 781 (1927); see also Otjen v. Frohbach, 148 Wis. 301, 308, 134 N.W. 832 (1912) ("The intention to create a trust must be clear, and the writing employed must be reasonably certain in its material terms . . . ."). "No trust is created unless the settlor manifests an intention to impose enforceable duties . . . ." Wilson v. Dixon (In re Wadleigh's Estate), 250 Wis. 284, 291, 26 N.W.2d 667 (1947) (citation omitted).

¶55 The second paragraph of Charles's one-page will is the relevant portion for purposes of this analysis. It provides:

> All the rest, residue and remainder of my property I give, devise and bequeath to my beloved wife, Thelma MacLeish, to use the income and so much of the principal as she may need for her care, comfort and support during her lifetime, meaning and intending hereby to give to my wife, Thelma MacLeish, the life use of the income and so much of the principal as she may need.

¶56 As the court of appeals did, we find Schomberg v. Gaenslen (In re Zweifel's Will), 194 Wis. 428, 216 N.W. 840 (1927), instructive to the situation at hand. The will at issue in Zweifel provided in relevant part that property would be devised to the testator's wife as follows:

> for her use and benefit, with full power and authority to sell, convey and dispose of absolutely in fee any part or all of my real or personal property, or both, at such price and consideration and upon such terms and conditions as she may see fit and proper, vesting in my wife, Emilie Zweifel, full power and authority to execute deed or deeds of conveyance with or without covenants of warranty to all intents and purposes . . . .

21

Id. at 431. The court interpreted this will to "give[] the widow absolute power of disposition, not accompanied by any trust." Id. at 436.

¶57 Charles's will is very similar to the will at issue in Zweifel. By its plain language, the will gave property to the testator's wife without restrictions, i.e. the wife had absolute power of disposition over the testator's assets during her lifetime. The Zweifel court based its conclusion that the will did not call for the imposition of a trust on the fact that the will called for the devisee's exclusive control over the testator's assets. Id. We do the same here.

¶58 It is true that the absence of the word "trust" from the second paragraph of Charles's will is not dispositive. Otjen, 148 Wis. at 308. However, the language of the will is unambiguous——it does not reflect an intent to create a trust, regardless of what the MacLeish children's expectation or "suggestion" may be. The language cannot be construed to compel the creation of a trust either as a matter of administration or by its explicit text. Instead of appointing any person to oversee his assets, directing that his assets be held for Thelma's benefit and imposing enforceable duties, Charles's will gives Thelma absolute power over the disposition of his assets. In other words, the will provides that Charles's property be devised to Thelma's exclusive control with no strings attached.

¶59 Further, as the court of appeals correctly observed, "[t]he word 'trust' appears in the will, but only and clearly in connection with events postdating Thelma's passing." MacLeish,

22

No. 2016AP2491, unpublished slip op., ¶16.  Yet the children contend that a trust should have been imposed at the time of Charles's passing, twenty-four years prior to Thelma's death.

¶60  In the third paragraph, the will states:

> At the death of my wife, Thelma, I direct that the remainder of my estate in existence at that time be placed in trust until my youngest child shall have completed his college education through a Bachelor's degree or indicated in writing to the trustee that he did not desire any further education, at which time said trust shall terminate and the remainder of my estate shall be divided equally between my four children.

The use of the word "trust" in the third paragraph of the will indicates that Charles was aware of the mechanism, yet chose not to employ it in the second paragraph.  "[T]he inclusion of language respecting certain heirs and the omission of it in respect to others manifest[s] a testamentary intention to make distinction between them." Zens v. Ferdinand (In re Ferdinand's Estate), 7 Wis. 2d 577, 583, 97 N.W.2d 414 (1959); see also Rosenbaum v. Bishop Tr. Co. (In re Friend's Will), 259 Wis. 501, 508-09, 49 N.W.2d 423 (1951).

¶61 Because the language of Charles's will devises property to Thelma without restrictions, Boardman's failure to impose a trust did not thwart the testator's clear intent.  To determine otherwise would be to potentially hold Boardman liable "not for thwarting testator intentions, but for properly carrying them out." Beauchamp, 240 Wis. 2d 733, ¶18.

¶62 Accordingly, we determine that Charles MacLeish's clear testamentary intent was not thwarted by any alleged

23

negligence on the part of Boardman. As a result, we conclude that the MacLeish children's claim against Boardman for legal malpractice was properly dismissed.

V

¶63 In sum, we reject the MacLeish children's invitation to adopt the Restatement (Third) of the Law Governing Lawyers § 51. The Auric exception remains the operative standard.

¶64 We further conclude that the narrow Auric exception to the rule of nonliability of an attorney to a non-client applies to the administration of an estate in addition to the drafting and execution of a will. That is, a non-client who is a named beneficiary in a will has standing to sue an attorney for malpractice if the beneficiary can demonstrate that the attorney's negligent administration of the estate thwarted the testator's clear intent.

¶65 Applying Auric to the facts of this case, we determine that Charles MacLeish's clear testamentary intent was not thwarted by any alleged negligence on the part of Boardman. As a result, we conclude that the MacLeish children's claim against Boardman for legal malpractice was properly dismissed.

¶66 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

24