COURT OF APPEALS
DECISION
DATED AND FILED

February 28, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2021AP2138**

STATE OF WISCONSIN

Cir. Ct. No.  2020PR63

IN COURT OF APPEALS
DISTRICT III

IN RE THE ESTATE OF MERLE J. HARBERTS:

JEFFREY J. HARBERTS,

    APPELLANT,

  V.

THE ESTATE OF MERLE J. HARBERTS, BY ITS PERSONAL REPRESENTATIVE, STEVEN R. CRAY, PETER J. HARBERTS AND GREGORY J. HARBERTS,

    RESPONDENTS.

       APPEAL from an order of the circuit court for Chippewa County: BENJAMIN J. LANE, Judge. *Affirmed*.

       Before Stark, P.J., Hruz and Gill, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. This appeal arises out of a conflict over the division of multiple parcels of real estate pursuant to the terms of Merle J. Harberts's will. Jeffrey J. Harberts appeals from a circuit court order approving the personal representative's proposed disposition of the properties over his objections. On appeal, Jeffrey also challenges the *procedure* for the disposition of the properties that the court had previously ordered. For the reasons that follow, we conclude that we lack jurisdiction to review Jeffrey's arguments pertaining to the prior order regarding the procedure for disposition of the properties. On the remaining issues, we affirm the court's decision on the merits.

## BACKGROUND

¶2    Merle—who was the father of Jeffrey, Peter J. Harberts, and Gregory J. Harberts[1]—died on June 10, 2020. In his will, dated April 25, 2020, Merle provided specific cash bequests to certain individuals and then instructed that the remainder of his Estate was to be distributed to his three sons in equal shares. The main asset of the Estate was real estate, which included two residences and eight rental properties.[2] Merle's will directed that those properties were to be sold. However, the will also contained a provision—Article Five— allowing the sons the first option to purchase the properties at a reduced price. Article Five provided as follows:

> I direct my Personal Representative to sell all of my real
> estate holdings in such parcels in configuration as my

---

[1] As these parties share the same last name, for ease of reading, we will refer to them by their first names.

[2] Merle's primary residence and the eight rental properties were located in Wisconsin, and his second residence was located in Florida. Appraisals of Merle's real estate holdings in both Wisconsin and Florida were obtained in late 2020.

2

Personal Representative deems advisable at public or private sale, at their then fair market value as determined by appraisal as soon as reasonably practicable after my death. Any one or all of my sons shall have the first right to purchase any one or all of my real estate holdings at any time within six months after the issuance of letters of office at ninety percent of their fair market value as determined by appraisal. The exercise of this option shall be in writing with the customary prorations to be made. If more than one son desires to purchase any particular parcel or parcels, and there is a disagreement as to who will purchase and the disagreement is not resolved at the end of the six-month period referred to above, then the property shall be sold at a public or private sale and the proceeds of the sale shall be added to my estate.

¶3 On February 1, 2021, Attorney Steven R. Cray was appointed as the Estate's personal representative,[3] and the circuit court ordered that the Estate would proceed under informal administration. In preparation to distribute the Estate's assets, Cray asked each son to put in writing whether he was interested in exercising the option to purchase any of the properties pursuant to Article Five of the will. More than one son expressed interest in each of the rental properties.[4] As a result, on May 14, 2021, Cray commenced a special proceeding in the circuit court by filing a Petition for Determination and Order, requesting an order from the court addressing, among other things, "[t]he procedure by which the Personal

---

[3] Merle's will named Benjamin J. Raether as the personal representative of the Estate. Peter and Gregory objected to Raether's appointment, and Raether was unable to obtain a bond ordered by the circuit court. As a result, Raether was not appointed. Peter and Gregory then moved the court to appoint Cray as personal representative.

[4] Gregory expressed an interest in Properties 1, 2, 3, 4, and 7. Peter stated an interest in Properties 5, 6, and 8. Jeffrey stated an interest in Properties 1-8, although he noted that "I would like up to 4 of the 7 yes. P.S. I have priorities, let's see what my brothers['] choices become." (Formatting altered.) None of the sons expressed interest in purchasing the primary residence in Wisconsin or the secondary residence in Florida. These properties were later sold without objection.

Representative shall sell the parcels that more than one of the decedent's sons wish to purchase under Article Five of the Will."

¶4      On June 7, 2021, Jeffrey, pro se, responded with a letter to the circuit court, suggesting a procedure wherein either all the properties would be sold and the proceeds would be divided equally or each brother would directly inherit specific properties. Jeffrey later withdrew that proposal in another letter to the court, wherein he alleged that his brothers were "not showing an intention to share this equally with all [three] brothers" and that "[b]oth my brothers are clearly abusing article 5 against me." (Formatting altered.) Peter and Gregory filed a joint response to Cray's petition on May 25, 2021.

¶5      The circuit court held a hearing on Cray's petition on June 15, 2021. At that hearing, on the subject of Article Five, the court explained,

> The will is clear. There's no requirement to be fair in this. What I mean by that is that article five says any one, any one or all of my sons, it does not require all sons get any … property. One person could be the sole beneficiary and purchaser of all of the real estate. There's no allocation that your dad wanted this to be fair. In fact, he understood that was the case.
>
> The will states that if more than one son desires to purchase any particular parcel or parcels, and there is a disagreement as to who will purchase and the disagreement is not resolved at the end of the six-month period referred to above, the property shall be sold at public or private sale. So this was not supposed to be fair.

¶6      As a result, the circuit court proposed a bidding process, wherein the Estate would be allowed to accept an offer from one of the sons at ninety percent of the appraised value of the property; however, if multiple beneficiaries were interested in a piece of property, they could bid against each other. The caveat established by the court was that if any brother's bid reached the appraised value,

Cray would list the property for public sale with a realtor. Any of the brothers could then purchase the property through public sale. According to the court,

> I don't want to play ping pong with these bids, again, like we did with the personal property, and so if there is a bidding war that occurs and if the bids result in a beneficiary asking for the exact same as the appraised value or more, then I think that the representatives should simply mark the real estate and sell it without offering it to either of the parties.

¶7      The circuit court also ordered that the sons would receive a credit in the amount of the twenty-five percent[5] of the sale price of the property, which would reduce the amount that the purchaser would need to bring to closing, based on the fact that, in the end, the purchaser would simply be paying himself those funds. Further, in order to determine whether the offers were bona fide, the court granted Cray's request that the sons provide proof of financing for the properties that they wished to purchase. In conformance with Article Five's six-month deadline, the court set the end of July 2021 as the deadline for completion of the bidding process.

¶8      Jeffrey did not object to the circuit court's proposal. Instead, he merely asked questions about how the bidding process would work if he wanted to bid on multiple properties. The court refused to give Jeffrey "individual advice on what [Jeffrey] should do," but the court clarified that if a bid was "[a]t or above" the appraised value, then the property would be listed for sale.

---

[5] At the hearing, the circuit court acknowledged that the credit should be closer to one-third of the sale price of the property, but the court explained that a twenty-five percent credit would "leave … additional amounts available to cover the estate expenses."

¶9    On July 16, 2021, the circuit court entered a written order reflecting the discussions at the hearing.  This order stated that it was final for purposes of appeal.

¶10    After the June 15, 2021 hearing, each of the brothers submitted an Exercise of Option to Purchase form (the bidding form).[6]  Peter stated that he was interested in three properties.  He listed his maximum bid as one cent below the appraised value of each of the properties, and he added a column on the bidding form to indicate ninety percent of the appraised value as his "minimum bid." Gregory's bidding form stated that he was interested in purchasing five properties—none of which were the same as the properties selected by Peter.  Like Peter, Gregory also listed his maximum bid as one cent below each property's appraised value on three of the five properties.  On the other two properties, he listed maximum bids approximately $14,000 and $18,000 below each property's appraised value.  Gregory too added a "minimum bid" column, listing ninety percent of the properties' appraised values.[7]  Both Peter and Gregory provided proof of financing for the purchase of all the properties in which they expressed an interest.

---

[6] The bidding form listed each parcel by its address in a table format.  The table included columns for each parcel's appraised value, ninety percent of the appraised value, whether the individual was exercising the option to purchase by indicating "yes" or "no," and the maximum bid.

[7] Jeffrey states on appeal that his brothers' "responses showed some confusion as to how to bid on the [p]roperties" because Gregory and Peter each added another column to the bidding form.  We disagree.  Gregory and Peter correctly understood that in order to avoid a property being sold at a public sale, they needed to keep their maximum bids under the appraised value. The brothers accomplished this requirement by setting their maximum bids at one cent below each property's appraised value and noting on the bidding form that the amounts were not to be rounded up.

¶11     Jeffrey's bidding form stated his interest in purchasing two properties, which were two of the properties that Gregory also selected. On his bidding form, Jeffrey crossed out the column titled "Maximum Bid" and changed it to "Current Bid." However, both current bids he listed for the properties were below Gregory's maximum bids. Jeffrey provided proof of financing in the maximum amount of $465,625 for those two properties combined. Since Jeffrey did not provide a maximum bid for either property in his initial submission, he was asked to resubmit the bidding form, which he did on July 24, 2021. Jeffrey added an additional column to the bidding form, which he titled "Max Bid," and listed a maximum bid of one dollar *over* the appraised value for seven of the eight rental properties. Aside from listing maximum bids, Jeffrey did not otherwise mark "yes" in the column questioning whether he would like to also purchase those five additional properties. Jeffrey also did not provide additional proof of financing for the maximum bids he entered for the five additional properties or for the increased bids on the two properties for which he had previously submitted bids.

¶12     On July 30, 2021, Jeffrey filed a letter with the circuit court raising several issues. Jeffrey alleged that Cray was not properly conducting the bidding process according to the court's order and was instead employing a "silent bid process where we only can bid one time." He also objected to having to secure "loans to inherit" his father's rental properties and requested instead that "the real estate [be] divided by allowance." (Formatting altered.) Further, Jeffrey objected to Gregory "backing Peter as the bank" and to using the current appraisals, which he argued were stale, unless he was also allowed to purchase properties.

¶13     The same day that Jeffrey filed his letter, Cray filed a Petition for Order on Disposition of Real Estate. The petition included a summary of the

7

bidding results, which stated that Gregory and Peter were each the highest bidder on three of the rental properties and that those six properties would not be listed for public sale. Cray did not consider Jeffrey's submission of his maximum bids on five of the properties, as Jeffrey "did not indicate that he wanted to purchase five of the parcels, and his proof of financing is limited to $465,625 on two parcels." According to Cray, "[i]t appears that Jeffrey Harberts is submitting bids in bad faith to frustrate the bids of his siblings to prevent the decedent's preference that the properties go to [the] decedent's children pursuant to his Will." For the remaining two properties, where Jeffrey listed maximum bids over the appraised value, Cray's summary stated that the properties would be listed for public sale. The petition asked the circuit court to approve the proposed disposition of the properties as set forth in the summary.

¶14 Jeffrey filed a response and an objection to Cray's petition on August 4, 2021, and August 5, 2021, respectively. In each submission, Jeffrey again objected to the process by which the bidding was being conducted, stating that it was not "letting [him] bid on each property individually—one at a time." Further, he objected to the use of the bidding form, as it was not in Article Five, it was not in Merle's will, it did not "abide[] by the instructions of a 'bidding war' explained by" the circuit court, and it was not a county- or state-approved real estate form. Jeffrey filed another response on September 8, 2021, again objecting to the use of the bidding form; alleging a side agreement existed between Cray's attorney, Peter, and Gregory; and requesting that rules and guidelines be implemented if the bidding form was used.

¶15 On September 9, 2021, the circuit court held a hearing on Cray's second petition. The court denied each of Jeffrey's objections. In particular, the court noted that Jeffrey was "objecting to the bidding process and that the court

referenced a bidding war," but the court explained that it "removed that option" and "limited it to getting a two-bid process" "rather than having a war that continues on and on going back and forth between the brothers that never ends." In summary, the court concluded:

> I don't understand what you're doing here and why you're making these allegations because it was very clear what was ordered on June 15th, and you didn't follow it. I mean it's very clear what you were required to do here and how you were supposed to submit these bids, and you didn't even follow that.
>
> And now you want the court to correct it because you're figuring out that you did not submit it properly on certain properties, and I'm not going to do that for you.

¶16 The circuit court entered an order granting Cray's petition on September 13, 2021, approving the Estate's proposed disposition of the properties. That order also stated that it was final for purposes of appeal.

¶17 On October 27, 2021, Jeffrey, now represented by counsel, moved for relief from the circuit court's July 16, 2021 and September 13, 2021 orders. Jeffrey's motion rehashed many of his previous arguments, but he also argued, for the first time, that the July 16 order was inconsistent with Merle's will. He requested that the court vacate the orders, that the properties be sold at public sale, and that the proceeds be distributed to the brothers equally. Gregory, Peter, and Cray objected to Jeffrey's motion on several bases. On November 23, 2021, a motion hearing was removed from the court's calendar by agreement of the parties, and the motion was never decided. Jeffrey filed his notice of appeal on December 10, 2021.

**DISCUSSION**

¶18    On appeal, Jeffrey argues first that the bidding process ordered by the circuit court violated the express terms of Merle's will, which called for a sale of the properties at a public or private sale in the event of a disagreement between the brothers.  Second, he claims that Merle's will did not require that the brothers provide proof of financing before being permitted to exercise their option to purchase the properties, and therefore the court erred by imposing the proof of financing requirement and rejecting Jeffrey's bids on that basis.  Third, he argues that the court incorrectly calculated the winner of the bidding because "Jeffrey put in a maximum bid of just over the appraised value.  Therefore, Jeffrey should have won both bids …."  Finally, he asserts that the court's "inconsistent treatment" of the brothers "will unfairly reduce the residue of the estate, to the detriment of Jeffrey only." (Formatting altered.)

¶19    In response, Peter and Gregory argue that this court lacks jurisdiction to consider any of the issues Jeffrey raises on appeal pertaining to the procedure for the disposition of the properties, which were addressed by the circuit court's July 16, 2021 order.  According to Peter and Gregory, the court's July 16 order was a final order for purposes of appeal; therefore, Jeffrey's notice of appeal filed on December 10, 2021, was untimely.  For the reasons that follow, we agree.

¶20    Jeffrey's notice of appeal, filed on December 10, 2021, states that he is appealing from the September 13, 2021 order, but his arguments on appeal make it clear that he is attempting to appeal from both the July 16, 2021 and the September 13 orders.  A notice of appeal from a final order must be timely filed to

give this court jurisdiction over the appeal. WIS. STAT. RULE 809.10(1)(e) (2021-22).[8] Here, Jeffrey's notice of appeal had to be filed within ninety days of entry of the order from which he seeks relief. *See* WIS. STAT. § 808.04(1). Accordingly, if the July 16 order was a final order, then the deadline for filing an appeal from that order was October 14, 2021. Therefore, the first question we must address is whether the July 16 order was a final order for purposes of appeal.

¶21 "Determining whether an order is final, and also determining whether an appeal is timely from a final judgment or order, both present questions of law that we review de novo." ***Sanders v. Estate of Sanders***, 2008 WI 63, ¶21, 310 Wis. 2d 175, 750 N.W.2d 806. "A party may only appeal, as a matter of right, from a judgment or an order 'that disposes of the entire matter in litigation as to one or more of the parties …' in an action or a special proceeding." ***Id.***, ¶26 (quoting WIS. STAT. § 808.03(1) (2005-06)). In ***Tyler v. RiverBank***, 2007 WI 33, ¶26, 299 Wis. 2d 751, 728 N.W.2d 686, our supreme court explained that

> a document constitutes the final document for purposes of appeal when it satisfies each of the following conditions: (1) it has been entered by the circuit court, (2) it disposes of the entire matter in litigation as to one or more parties, and (3) it states on the face of the document that it is the final document for purposes of appeal.

*See also* ***Wambolt v. West Bend Mut. Ins. Co.***, 2007 WI 35, ¶39, 299 Wis. 2d 723, 728 N.W.2d 670 ("[I]n order to 'dispose' of the matter under § 808.03(1) [(2005-06)], a memorandum decision must contain an explicit statement either dismissing the entire matter in litigation or adjudging the entire matter in litigation

---

[8] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

as to one or more parties."). "The test of finality is not what later happened in the case but rather, whether the … court contemplated the document to be a final judgment or order at the time it was entered. This must be established by looking at the document itself, not to subsequent events." *Fredrick v. City of Janesville*, 92 Wis. 2d 685, 688, 285 N.W.2d 655 (1979).

¶22 As relevant to this case, our supreme court has held "that the probate of an estate is a series of special proceedings, which are terminated with a series of orders that are final orders for the purposes of an appeal." *See Sanders*, 310 Wis. 2d 175, ¶26 (citations omitted). Thus, "[b]ecause the probate of an estate may consist of a series of special proceedings, unlike other forms of litigation, probate can result in a series of potentially final orders." *Id.*, ¶27. These, in turn, may give rise to more than one appeal, as "a party in such a proceeding may take an appeal as a matter of right at any time in the probate process when a special proceeding disposes of an entire matter in litigation as to one or more parties." *Id.*, ¶28.

¶23 As *Sanders* instructs, "[w]e must first identify the scope of the relevant 'matter in litigation' in regard to the real estate special proceeding in the present case." *See id.*, ¶29. Here, the scope of the special proceeding as it pertains to the July 16, 2021 order is easily determined based on Cray's petition filed on May 14, 2021. That petition, as noted above, sought an order from the circuit court addressing several issues, including a request to construe Article Five to determine a procedure for disposing of the real estate pursuant to the will's terms. *See* WIS. STAT. § 865.04(2)-(3). The July 16 order disposed of all the issues raised in the May 14 petition. *See Sanders*, 310 Wis. 2d 175, ¶28.

12

¶24 Accordingly, we agree that the July 16, 2021 order was intended to be a final order. Considering the conditions outlined in *Tyler*, the circuit court entered the July 16 order, the order disposed of the entire matter in the special proceeding as outlined in the May 14, 2021 petition, and the order stated that it was a final order for purposes of appeal. *See Tyler*, 299 Wis. 2d 751, ¶26. No further hearings were scheduled. Indeed, none were required at that point, as informal administration of the Estate was expected to resume.[9] *See* WIS. STAT. § 865.10(1) ("The personal representative shall proceed with the settlement and distribution of the decedent's estate and, except as provided by this chapter or required by interested persons, shall do so without adjudication, order or direction of the court.").

¶25 If the brothers had agreed on who would purchase each property and at what price, or their subsequent bidding resolved those issues, then there would have been no further need to involve the circuit court on the issue of the distribution and sale of the real estate. The fact that the brothers could not agree, and an additional hearing was later required to approve Cray's proposed distributions, did not alter the July 16, 2021 order's status as a final order. *See Fredrick*, 92 Wis. 2d at 688. Once the bidding process was complete, Cray filed a

---

[9] In this case, probate was commenced in the circuit court by an application for informal administration on June 30, 2020. "'Informal administration of estates' means the administration of decedents' estates, testate and intestate, without exercise of continuous supervision by the court." WIS. STAT. § 865.01. Nevertheless, formal proceedings "before the court" "either as to a particular issue or as to the entire subsequent administration of the estate, may be initiated by the personal representative or by any interested person at any time by a written demand therefor." WIS. STAT. § 865.03(1). "Petitions in formal proceedings during informal administration may combine various requests for relief if all the requests may be finally granted without delay." WIS. STAT. § 865.04(3). "Upon entry of an order or judgment in a formal proceeding," however, "informal administration shall resume except as otherwise ordered by the court." Sec. 865.04(4).

second petition, on July 30, 2021, based on subsequent disputes that arose after the July 16 order was entered. That additional petition commenced a second and distinct special proceeding, where it was no longer appropriate to question the bidding process outlined in the July 16 order; instead, the only question before the court in the second special proceeding was whether the July 16 order was properly followed. Therefore, we have no jurisdiction to consider Jeffrey's arguments regarding the July 16 order, as a notice of appeal from that order was not timely filed.

¶26 What remains before us on appeal, then, are Jeffrey's arguments that the circuit court incorrectly calculated the winner of the bidding process and that he was deprived of his fair share of the Estate. To the extent Jeffrey's arguments call on us to interpret Merle's will, that is a question of law that we review independently. *See* ***MacLeish v. Boardman & Clark LLP***, 2019 WI 31, ¶23, 386 Wis. 2d 50, 924 N.W.2d 799. However, to the extent the court's decision involved an exercise of discretion, we affirm a court's discretionary decision if the court applied the correct law to the relevant facts and reasoned its way to a reasonable conclusion. ***Gittel v. Abram***, 2002 WI App 113, ¶48, 255 Wis. 2d 767, 649 N.W.2d 661.

¶27 On appeal, Jeffrey argues that he "should have won two of the bids the circuit court ordered for public sale." According to Jeffrey, "[d]espite casting the parties' bids as 'maximum bids,' the court did not treat Jeffrey's bids as 'up to' an amount. A 'maximum bid' implies that the bid would be above the last bidder … up to a maximum amount." Instead, he explains, "the circuit court treated Jeffrey's maximum bid simply as a bid over the appraised value."

¶28    We disagree that the circuit court erred under the circumstances. The court accepted Jeffrey's maximum bids on the two properties that he stated he wished to purchase and for which he claimed that he had provided proof of financing.[10]  However, Jeffrey's maximum bids were one dollar over the appraised value of the two properties, and, in accordance with the clear terms of the court's July 16, 2021 order, the court therefore ordered those properties sold at a public sale.  We agree with Peter and Gregory that Jeffrey's contrary arguments are without merit and merely "illustrate[] his own confusion."

¶29    The circuit court did not state either at the June 15, 2021 hearing or in its July 16, 2021 order that the bidding procedure would allow for incremental bids up to a certain amount.  Even if the court had allowed such a procedure, it is entirely unclear what Jeffrey's bids should have been, as even on appeal Jeffrey asserts only that the court should have considered his bids as "just above" Gregory's bids on the two properties.  Further, given that Gregory's bid on one of the properties was one cent less than the appraised value, any bid that Jeffrey made over Gregory's would have resulted in the property being sold at public sale, as the court was very clear at the June hearing and in its July order that a public

_____

[10] Jeffrey also argues that the circuit court improperly dismissed his bids because he failed to show proof of financing for all seven properties.  According to Jeffrey, he "explained to the circuit court multiple times that he wanted to bid on seven of the [p]roperties until he had won two bids, after which he did not wish to bid further" and he "had [further] informed the circuit court [by letter] on June 7, 2021 that he had 'about 790 to 800 FICO Score,' and that he could obtain loans to buy the [p]roperties he was interested in."  The bidding procedure that Jeffrey wished for, however, was not the bidding procedure ordered by the court in its July 16, 2021 order.  Thus, Jeffrey may have "wanted" to bid on multiple properties until he won one, but the court's order required that proof of financing be provided for the properties that each brother sought to purchase.  Jeffrey provided proof of financing for the two properties he marked on the bidding form that he wanted to purchase, and the court accepted those bids.  It properly disregarded the maximum bids on the other properties for which Jeffrey did not mark "yes" on the bidding form and did not provide proof of financing.

sale would take place if the bids reached the appraised value. The court refused to correct any possible misunderstanding on Jeffrey's part on that point. Accordingly, the court properly accepted Jeffrey's maximum bid, which exceeded the appraised values of the two properties that he wished to purchase, and properly ordered those properties sold at public sale.

¶30 Finally, Jeffrey contends that the circuit court's "inconsistent treatment" of the brothers "will unfairly reduce the residue of the Estate, to the detriment of Jeffrey only," as "Jeffrey will inherit much less from Merle's estate than Gregory or Peter." (Formatting altered.) According to Jeffrey, "[s]ince the estate received only 90 percent of the sale price of most of the rental properties, the residue of the estate will be much less than it would have been had the properties been sold for full value." Further, he complains that because the appraisal values were stale, "the cash left in the estate will be even further reduced because of the artificially low prices compared to fair market values." Thus, because Jeffrey "was not able to acquire any properties directly," he "will therefore inherit only the reduced cash from the disposition of the [p]roperties."

¶31 Initially, we note that Jeffrey's arguments on this point are entirely undeveloped, as he fails to point to any terms in Merle's will or provide any legal authority in support of his position. *See **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). Regardless, we agree with the Estate that the plain terms of Merle's will anticipate that the sons may receive different shares from the Estate. Article Five of Merle's will provides, in part: "Any one or all of my sons shall have the first right to purchase any one or all of my real estate holdings at any time within six months after the issuance of letters of office at ninety percent of their fair market value as determined by appraisal." Thus, any son who purchased property would receive a benefit of ten percent of the value of the

16

property, and Article Five contains no provision requiring that all of the sons receive an equal number of properties, an equal value in property, or even any properties at all. As the circuit court recognized, "There's no requirement to be fair in this." The fact that Jeffrey did not receive any of Merle's properties does not violate the terms of the will because the will clearly contemplated that result.

¶32 As to Jeffrey's argument that the appraisals of the properties were stale, we disagree that the circuit court erred by failing to order that the properties be reappraised. Article Five states, "I direct my Personal Representative to sell all of my real estate holdings in such parcels in configuration as my Personal Representative deems advisable at public or private sale, *at their then fair market value as determined by appraisal as soon as reasonably practicable after my death*." (Emphasis added.) The will does not provide that additional appraisals should be conducted after a certain point—a provision likely deemed unnecessary given the six-month deadline included in Article Five—and Jeffrey does not allege that the appraisals were not conducted "as soon as reasonably practicable after" Merle's death. Accordingly, the court did not err by failing to order new appraisals.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.